Mark E. Ferrario (Nevada Bar No. 1625)
**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive
Suite 600
Las Vegas, NV 89135
Telephone: (702) 938-6870
Facsimile: (702) 792-9002
Email: ferrariom@gtlaw.com

Casie D. Collignon (admitted *pro hac vice*)
Matthew D. Pearson (*pro hac vice forthcoming*)
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, Colorado 80202
Telephone:   (303) 861-0600
Facsimile:    (303) 861-7805

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JENNIFER MIRANDA and PATRICIA TERRY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOLDEN ENTERTAINMENT (NV), INC.,<br><br>Defendant. | Case No.: 20-cv-00534-JAD-DJA<br><br>**DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>**(ORAL ARGUMENT REQUESTED)** |

Defendant Golden Entertainment (NV), Inc. ("Golden") hereby submits its Motion to Dismiss Plaintiffs Jennifer Miranda's ("Miranda") and Patricia Terry's ("Terry") (collectively, "Plaintiffs") Class Action Complaint ("Complaint") and respectfully requests that this Court dismiss the Complaint with prejudice and without leave to amend.

## I. **INTRODUCTION**

In late 2019, Golden, like so many companies before it, was the victim of a criminal cyberattack. These criminal actors preyed on Golden and its employees, illegally attempting to gain access to the employees' work email accounts.

Upon discovering the attack, Golden worked quickly and decisively to disable the impacted accounts, reset passwords, and thoroughly investigate the issue. At the end of that process, in compliance with the law and out of an abundance of caution, Golden notified individuals whose personally identifiable information ***may*** have been impacted by the attack. Plaintiffs are two of the individuals notified.

After receiving notification of the cyberattack, Plaintiffs filed this lawsuit, on behalf of themselves and, purportedly, on behalf of every person who was notified. They did not file this lawsuit because either of them experienced identity theft as a result of the attack. Neither did. Nor do they bring this lawsuit because an unauthorized person (1) opened a bank account in their names, (2) filed false tax returns, or (3) made fraudulent charges on their credit cards. None of that happened. Terry alleges no fraudulent activity whatsoever, and Miranda merely alleges that someone ***attempted*** to access her bank account at some point after the cyberattack. In truth, Plaintiffs filed this lawsuit because they received notification of the attack, nothing more. Notification, alone, is an insufficient ground upon which to file a lawsuit.

Indeed, two different United States District Court for the District of Nevada judges have recently rejected nearly identical allegations to the allegations here. In *Pruchnicki v. Envision Healthcare Corp.*, No. 219CV1193JCMBNW, 2020 WL 853516 (D. Nev. Feb. 20, 2020)[1], the

---

[1] *Pruchnicki* is currently on appeal to the Ninth Circuit, but the plaintiff's opening brief has not yet been filed.

plaintiff filed a lawsuit after being notified of a phishing attack. She did not allege, nor had she suffered, any fraud or theft. Instead, she claimed, among other things, (1) an increased risk of fraud in the future, (2) lost time mitigating the effects of the data breach, and (3) continued risk to her personal data. *Id.* at *4. The defendants filed their motion to dismiss, arguing that the plaintiff had not adequately alleged cognizable injury. They then moved to stay the action pending a ruling on the motion to dismiss. [*See Pruchnicki v. Envision Healthcare Corp.*, Case No. 219CV1193JCMBNW, ECF No. 28.]

On February 20, 2020, Magistrate Judge Brenda Weksler issued her ruling on the motion to stay. After taking a "'preliminary peek' at the merits of the" motion to dismiss, Magistrate Judge Weksler found that she was "convinced that the Plaintiff will be unable to state a claim for relief" and that the motion to dismiss could "be decided without additional discovery" because the plaintiff did "not need [additional] information in order to adequately plead damages in the first instance." [*See id.* at ECF No. 48, 5:12-16, 6:18-20 ("Motion to Stay Transcript"), attached hereto as Exhibit A.][2] As such, Magistrate Judge Weksler granted the stay. That same day, Article III Judge James C. Mahan issued his ruling on the motion to dismiss. As predicted by Magistrate Judge Weksler, Judge Mahan granted the motion to dismiss in its entirety and with prejudice. According to Judge Mahan, "none of plaintiff's purported damages are sufficient to plausibly allege a claim upon which relief can be granted." *Pruchnicki*, 2020 WL 853516, at *7.

This Court should reach the same conclusion here. An actual injury is required to state a claim after being notified of a cyberattack. And increased risk of future harm, lost time, or attempted access to a bank account alone simply does not suffice. Golden respectfully requests that the Court grants its Motion to Dismiss in its entirety and with prejudice.

---

[2] Golden respectfully requests that the Court take judicial notice of the Motion to Stay Transcript, attached hereto as Exhibit A. *See D&L Framing, LLC v. Clarendon Am. Ins. Co.,* No. 205CV01307RLHGWF, 2007 WL 9725258, at *2 (D. Nev. Sept. 13, 2007) ("It is appropriate to take judicial notice of court filings and other matters of public record such as pleadings, briefs, memoranda, motions, and transcripts filed in the underlying litigation.").

## II. **PLAINTIFFS' ALLEGATIONS**

Plaintiffs allege that "[b]etween May 30, 2019 and October 6, 2019," Golden was the victim of a criminal cyberattack ("Phishing Attack"). [Complaint, ¶ 2; *see also id.* at ¶ 17.] Plaintiffs claim that, as a result of the Phishing Attack, "names, Social Security numbers, passport numbers, government ID numbers, driver's license numbers, dates of birth, usernames, passwords, payment card numbers, expiration dates, card security codes ('CVV'), financial account numbers, routing numbers, health insurance information, and health or treatment information" of Golden's customers, current and former employees, and vendors were potentially compromised. [*Id.*]

### A. **Miranda's Allegations**

More specifically, Miranda alleges that she "is a citizen of Nevada who resides in Clark County, Nevada." [Complaint, ¶ 4.] Miranda claims that she "worked at PT's Gold Pub, one of [Golden's] properties, between 2015 and 2016." [*Id.*] As part of her employment, according to Miranda, she gave "her PII, including her Social Security Number, to" Golden. [*Id.*] Miranda alleges that, after the Phishing Attack, she was "the victim of identity theft in October 2019 when an unauthorized user attempted to gain access to [Miranda's] bank account." [*Id.*] Miranda claims that, in dealing with the Phishing Attack, she paid for Experian's credit reporting service, which cost her $9.99 a month." [*Id.*] And she alleges that she "was forced to lock her credit report" and "spent two weeks of sustained agony dealing with the attempted identity theft[.]" [*Id.*]

### B. **Terry's Allegations**

Terry alleges that she "is a citizen of Nevada who resides in Clark County, Nevada." [Complaint, ¶ 5.] Terry claims that she was a "regular customer and guest at Arizona Charlie's Hotel & Casino, one of [Golden's] properties, for 15 years, and last visited Arizona Charlie's in February 2020." [*Id.*] She also alleges that "as part of staying and using the facilities at Arizona Charlie's, [she] have her PII, including her Social Security Number, to [Golden]." [*Id.*] Terry does not allege that she has experienced any fraudulent activity or that she has incurred any out-of-pocket expenses as a result of the Phishing Attack. [*See, generally, id.*]

3

Based on the above allegations, Plaintiffs assert four causes of action: (1) negligence; (2) negligence *per se* for violation of the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTCA"); (3) negligence *per se* for violation of the Nevada Data Breach Law, NRS §§ 603A.010, *et seq*.; and (4) violation of the Nevada Deceptive Practices Act, NRS § 598.0903, *et seq.* ("NDTPA").

## III.  MOTION TO DISMISS STANDARD

A complaint is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) if there are insufficient facts alleged under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Facial plausibility" requires factual allegations "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556 (2007)). Although a complaint "does not need detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

## IV.  ARGUMENT

### A.  **Plaintiffs Have Failed To Plausibly Allege "Cognizable Injury," A Requisite Element Of Their Negligence, Negligence *Per Se*, and Violation of the NDTPA Claims.**

Each of Plaintiffs' negligence, negligence *per se*, and violation of the NDTPA claims requires Plaintiffs to plausibly allege that they suffered cognizable injury as a result of Golden's conduct. *See Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.,* 125 Nev. 818, 824, 221 P.3d 1276, 1280 (2009) ("It is well established that to prevail on a negligence claim, a plaintiff must establish four elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) **damages**." (emphasis added)); *Williams v. Heritage Square, LLC*, No. 2:15-

CV-01598-APG-PAL, 2017 WL 3667704, at *4 (D. Nev. Aug. 24, 2017), *appeal dismissed*, No. 17-16900, 2017 WL 6501699 (9th Cir. Nov. 16, 2017) ("Under a negligence *per se* theory, [the plaintiff] must prove that (1) a statute was violated, (2) he belongs to the class of persons that the provision was intended to protect, and (3) **the injury he suffered** is of the type the provision was intended to prevent." (emphasis added)); *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009) ("The Court therefore concludes that for a private NDTPA claim for damages, the Nevada Supreme Court would require, at a minimum, a victim of consumer fraud to prove that (1) an act of consumer fraud by the defendant (2) caused (3) **damage to the plaintiff**.") (emphasis added)). Neither Plaintiff has done so here. Therefore, their claims should be dismissed.

### 1. Terry Has Not Alleged That She Suffered Any Injury as a Result of the Phishing Incident.

As noted above, Terry does not allege that she suffered any fraud or identity theft as a result of the Phishing Attack. [*See* Complaint, ¶ 5.] Nor does she allege that she incurred any out-of-pocket expenses because of the Phishing Attack. [*See id.*] Instead, Terry alleges that she "now faces a substantial and imminent risk of fraud, identity theft, and long-term adverse effects as a result of h[er] PII being compromised." [*Id.*] But, an increase in future risk does not constitute cognizable injury. *See Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010) (holding that "the danger of future harm" does "not establish[] a cognizable injury"). Terry must allege that she has *already* experienced actual harm. *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1055 (E.D. Mo. 2009) (dismissing negligence claim because "[d]amages cannot reasonably be assessed for a hypothetical harm which may (or may not) come to plaintiff in the future."). She has failed to do so.

Terry also makes a few generic and conclusory "damage"-related allegations, none of which suffices to state a claim. For example, Terry alleges that the Phishing Attack "foreseeably caus[ed]" her and "members of the Class" to "expend time and resources investigating the extent to which the breach puts their credit, reputation, and finances at risk" and to take "reasonable steps (now or in the future) to redress fraud, identity theft, and similarly foreseeable consequences

of unauthorized and criminal access to their PII." [Complaint, ¶¶ 44, 54, 67, 74.]  Put simply, Terry alleges that she and Class Members spent time addressing the possible effects of the Phishing Attack.  But, like her allegation of increased future risk, Terry's lost-time allegation, without more, is insufficient to state a claim.  *See, e.g., Corona v. Sony Pictures Entm't, Inc*., No. 14-CV-09600-RGK-EX, 2015 WL 3916744, at *4 (C.D. Cal. June 15, 2015) ("[G]eneral allegations of lost time are too speculative to constitute cognizable injury."); *see also Shafran v. Harley-Davidson, Inc.,* No. 07 CIV. 01365 (GBD), 2008 WL 763177, at *3 (S.D.N.Y. Mar. 20, 2008) ( "Courts have uniformly ruled that the time and expense of credit monitoring to combat an increased risk of future identity theft is not, in itself, an injury that the law is prepared to remedy."); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig*., 613 F.Supp.2d 108, 134 (D. Me. 2009), *aff'd in part, rev'd in part sub nom. on other grounds, Anderson v. Hannaford Bros. Co.*, 659 F.3d 151 (1st Cir. 2011) ("[T]here is no way to value and recompense the time and effort that consumers spent in reconstituting their bill-paying arrangements or talking to bank representatives to explain what charges were fraudulent.  Those are the ordinary frustrations and inconveniences that everyone confronts in daily life with or without fraud or negligence."); *Pruchnicki*, 2020 WL 853516, at *4 (holding "that tangible, out-of-pocket expenses are required in order for lost time spent monitoring credit to be cognizable as damages."); *Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 14 (D.D.C. 2019) (stating, consistent with Ninth Circuit precedent, that "time and money spent protecting against future identity theft cannot constitute damage in their own right for purposes of plaintiffs' negligence and breach of fiduciary duty claims.").

Finally, Terry alleges, without offering any facts in support, that she and the Class Members "have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and nonmonetary damages, including from fraud and identity theft." [Complaint, ¶ 74.] Not only is this allegation belied by the Complaint, as Terry does not allege to have suffered any fraud, theft, or out-of-pocket losses, but it is also too conclusory to be given any weight. *Iqbal*, 556 U.S. at 678 (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *see also Holly v. Alta Newport Hosp., Inc.*, No. 219CV07496ODWMRWX, 2020 WL 1853308, at *6 (C.D. Cal. Apr. 10, 2020)

6

(granting motion to dismiss negligence and breach-of-contract claims because plaintiff's "conclusory and vague allegations are insufficient to establish that she suffered actual damages as a result of the data breach"). Terry must allege *facts* to support her claim that she sustained "losses of money or property" and "monetary and nonmonetary damages." She has failed to do so. Therefore, her claims must be dismissed.

### 2. Miranda Has Not Alleged That She Suffered Any Injury as a Result of the Phishing Attack.

The majority of Miranda's allegations largely mirror those of Terry's. Like Terry, Miranda makes the generic allegations that she is at an increased risk of future harm, that she spent time dealing with the potential ramifications of the Phishing Attack, and that she incurred losses of money or property." [*See* Complaint, ¶¶ 44, 54, 67, 74.] As discussed above, none of these allegations suffices.

Unlike Terry, however, Miranda does allege that in October 2019, she "was the victim of identity theft…when an unauthorized user *attempted* to gain access to [her] bank account." [*Id.* at ¶ 4 (emphasis added).] But Miranda does not allege that the unauthorized user was successful in accessing her bank account. Likewise, she does not allege that the unauthorized user stole anything from her or, if he or she did, that Miranda's bank did not reimburse her. All she alleges, in terms of the fraudulent activity, is that someone *tried*.

Her allegations, therefore, are similar to those held insufficient by the Second Circuit in *Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89, 90 (2d Cir. 2017). There, the plaintiff alleged that "(1) her credit card information was stolen and used twice in attempted fraudulent purchases; (2) she faces a risk of future identity fraud; and (3) she has lost time and money resolving the attempted fraudulent charges and monitoring her credit." *Id.* at 90. The Second Circuit found these allegations insufficient to confer Article III standing—a standard that is easier to meet than pleading "cognizable injury"[3]—because the plaintiff did not allege that she "was either asked to

---

[3] *See, e.g., Dugas v. Starwood Hotels & Resorts Worldwide, Inc.,* No. 316CV00014GPCBLM, 2016 WL 6523428, at *10 (S.D. Cal. Nov. 3, 2016) ("A holding that a plaintiff has pled an injury in fact for purposes of Article III standing does not establish that he adequately pled his cause of

7

DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT

pay, nor did pay, any fraudulent charge." *Id.; see also Portier v. NEO Tech. Sols.,* No. 3:17-CV-30111-TSH, 2019 WL 7946103, at *15 (D. Mass. Dec. 31, 2019), *report and recommendation adopted*, No. 3:17-CV-30111, 2020 WL 877035 (D. Mass. Jan. 30, 2020) (dismissing some plaintiffs' negligence claims for lack of cognizable injury because "none of the instances of attempted identity theft or fraudulent credit charges resulted in any economic loss"); *In re SuperValu, Inc., Customer Data Sec. Breach Litig.*, No. 14-MD-2586 ADM/TNL, 2018 WL 1189327, at *11 (D. Minn. Mar. 7, 2018), *aff'd sub nom. In re SuperValu, Inc.*, 925 F.3d 955 (8th Cir. 2019) ("Data breach cases in Illinois and elsewhere have repeatedly held that a cardholder's mere allegation of an unauthorized charge, unaccompanied by an out-of-pocket loss, is not sufficient to state an actionable injury."); *Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-00186-TBR, 2017 WL 5986972, at *4 (W.D. Ky. Dec. 1, 2017) (holding "that the mere filing of a fraudulent tax return in Plaintiff Savidge's name, by itself, [did not] cause[] her cognizable injury" because "the IRS, apparently skeptical of the authenticity of the return, notified Savidge that it had been filed and stated that it would not process it until she verified that it was genuine.").

The same is true here. While Miranda does allege that someone *tried* to access her bank account without her permission, she does not allege that the attempt was successful. In fact, Miranda's allegation is even weaker than the allegation in *Whalen* because, at least in *Whalen*, fraudulent charges were incurred, even if they were not paid by the plaintiff. Here, at best, Miranda's allegations merely demonstrate that she was notified of an unauthorized attempt to access her bank account. That does not suffice to allege cognizable injury.

In an attempt to bolster her damage allegations, Miranda also alleges that, in response to the attempted access to her bank account, she "paid for Experian's credit reporting service, which cost her $9.99 a month." [Complaint, ¶ 4.] Miranda does not allege when she purchased this

---

action."); *see also id.* ("However, that Plaintiff has pled an injury in fact for purposes of Article III standing as to the § 1798.81.5 claim does not establish that he has adequately pled damages for the cause of action."); *Moyer v. Michaels Stores, Inc.*, No. 14 C 561, 2014 WL 3511500, at *7 (N.D. Ill. July 14, 2014) ("[A]lthough Plaintiffs have standing, they have not pled the type of actual economic damage necessary to state Illinois law claims for breach of implied contract (Count I) or violation of the Consumer Fraud Act (Counts II and III).").

8

credit monitoring [*see, generally, id.*], but she does admit that, as early as November 7, 2019, Golden began mailing notices to persons potentially impacted by the Phishing Attack offering them "complimentary credit monitoring and identity theft protection services through Experian…," [*Id.* at ¶ 22]. Therefore, absent the date of purchase or the complete array of services purchased, neither Golden nor the Court can determine whether Miranda concocted these alleged "damages" by purchasing the exact same product that was already voluntarily offered by Golden to Miranda. *See In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 26 (D.D.C. 2014) (holding, in the Article III standing context, "that plaintiffs cannot create standing by 'inflicting harm on themselves' to ward off an otherwise speculative injury" by purchasing "credit monitoring and other preventive measures").

Admittedly, in most cases where the cost of credit monitoring has been held not to constitute cognizable injury, the plaintiff had not alleged any misuse of her information, which, for Miranda, is not the case here. *See, e.g., Gardner v. Health Net, Inc.*, No. CV 10-2140 PA (CWX), 2010 WL 11597979, at *7 (C.D. Cal. Aug. 12, 2010). However, in the cases finding that the purchase of credit monitoring did, in fact, result in "damages," the plaintiff alleged actual fraud, not attempted fraud. *See, e.g., Anderson v. Hannaford Bros. Co.,* 659 F.3d 151, 166 (1st Cir. 2011) ("Knowing her personal data had been breached and misused, and knowing the thieves were sophisticated and ***had rung up thousands of unauthorized charges***, plaintiff Valburn had a reasonable basis for purchasing identity theft insurance to avoid further damage." (emphasis added).)

Here, as discussed above, Miranda has not alleged any fraud or theft resulting in damages to her. Indeed, she has alleged no cognizable injury at all and, therefore, has nothing to mitigate by purchasing credit monitoring. Miranda's claims should be dismissed.

**B.     Plaintiffs' Negligence and Negligence *Per Se* Causes of Action are Barred by the Economic Loss Rule.**

"In Nevada, the economic loss doctrine bars negligent tort actions where the plaintiff seeks to recover only economic loss." *Fuoroli v. Westgate Planet Hollywood Las Vegas, LLC*, No. 2:10-CV-2191-JCM-GWF, 2011 WL 1871236, at *3 (D. Nev. May 16, 2011); *see also*

*Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 125 Nev. 66, 73, 206 P.3d 81, 86 (2009) ("[T]his court has concluded that the doctrine bars unintentional tort actions when the plaintiff seeks to recover 'purely economic losses.'"). Put simply, "unless there is personal injury or property damage, a plaintiff may not recover in negligence for economic losses." *Terracon Consultants W., Inc.*, 125 Nev. at 74.

Courts applying Nevada law in data breach cases have held that the economic loss doctrine bars negligence-based claims. *Affinity Gaming v. Trustwave Holdings, Inc.*, No. 2:15-CV-02464-GMN-PAL, 2016 WL 5799300, at *6 (D. Nev. Sept. 30, 2016) (dismissing gross negligence claim under economic loss doctrine); *In re Zappos.com, Inc.*, No. 3:12-CV-00325-RCJ, 2013 WL 4830497, at *3 (D. Nev. Sept. 9, 2013) (stating that "the Court is compelled to agree with Defendant that the economic loss doctrine bars recovery in negligence in this case.").

As discussed above, neither Terry nor Miranda alleges any facts to support a finding that they were injured in any way by the Phishing Attack. But, even if they were injured, their injuries would be solely economic. Plaintiffs do not and cannot allege that they suffered personal injury from the Phishing Attack. Nor do they allege that the Phishing Attack caused them to incur any property damage. As such, Plaintiffs' negligence and negligence *per se* claims are barred by Nevada's economic loss doctrine and should be dismissed.

### C.     **Plaintiffs' NDTPA Claim Fails.**

"Section 41.600 allows an action to be brought by any person who is a victim of consumer fraud." *JACQUELINE STEINMETZ, Plaintiff v. AMERICAN HONDA FINANCE, et al., Defendants. Additional Party Names: Am. Honda Fin. Corp., Chase Card, Experian Info. Sols., Experian Info. Sols., Inc., JPMorgan Chase Bank, N.A., Select Portfolio Servicing, LLC*, No. 219CV00067APGEJY, 2020 WL 1324989, at *11 (D. Nev. Mar. 20, 2020). The NDTPA defines "consumer fraud" as "[a] deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive." *Id.* (citing NRS § 41.600(2)(e)).

Plaintiffs here claim that Golden engaged in a deceptive trade practice by violating five subsections of the NDPTA. [Complaint, ¶ 71(a)-(e).] These five subsections fall into two categories: (1) knowingly misrepresenting or omitted certain facts and (2) violating a state or

federal statute relating to the sale of lease of goods or services.  Yet, regardless of the alleged deceptive trade practice on which Plaintiffs base their claim, it still fails.

### 1. Plaintiffs' NDTPA Claims Based on Alleged Misrepresentations and Omissions Do Not Meet Rule 9(b)'s Heightened Pleading Standard.

Plaintiffs' violation of the NDTPA claim based on Golden's alleged misrepresentations and omissions must meet Rule 9(b)'s heightened pleading standard. *See Allstate Ins. Co. v. Belsky*, No. 2:15-CV-02265-MMD-CWH, 2017 WL 7199651, at *7 (D. Nev. Mar. 31, 2017) ("Consumer fraud claims brought under this statute are subject to Rule 9(b)'s heightened pleading requirements."); *see also Cuadros v. State Farm Fire & Cas. Co.,* No. 216CV2025JCMVCF, 2017 WL 2683681, at *4 (D. Nev. June 20, 2017) (holding that "[i]f plaintiff is filing for misconduct under [the NDTPA], the claim must be pled with particularity under Federal Rule of Civil Procedure 9(b)."). Rule 9(b) "requires that a party claiming fraud state with particularity the circumstances constituting fraud…includ[ing] the time, place, and content of the misrepresentation." *Gage v. Cox Commc'ns, Inc.*, No. 2:16-CV-02708-KJD-GWF, 2017 WL 1536219, at *2 (D. Nev. Apr. 27, 2017) (internal citations and quotations omitted).

Plaintiffs here allege that Golden made several affirmative misrepresentations in violation of the NDTPA.  For example, they claim that Golden "knowingly ma[de] false representations as to the characteristics, uses, and benefits of goods or services for sale." [Complaint, ¶ 71(a).]  They also claim that Golden "represent[ed] that goods or services are of a particular standard, quality, or grade when [it] knew or should have known that they are another standard, quality or grade." [*Id.* at ¶ 71(b).]  And they allege that Golden "advertis[ed] goods and services with intent not to sell them as advertised." [*Id.* at ¶ 71(c).]

Yet, despite these alleged misrepresentations, nowhere in the Complaint do Plaintiffs provide any facts regarding "the time, place, and content of the misrepresentation," as required by Rule 9(b).  *Gage*, 2017 WL 1536219, at *2.; *Phillips v. Dignified Transition Sols.*, No. 2:13-CV-02237-GMN, 2014 WL 4294972, at *5 (D. Nev. Aug. 28, 2014) (dismissing NDTPA claim because "Plaintiff does not state the method by which these misrepresentations were communicated, where the misrepresentations were made, or in some other way provide enough

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

context surrounding the communications by [defendant's] employees to effectively provide notice to [defendant] of the specific misrepresentations alleged in the Complaint.").

In fact, the only communication between Golden and Plaintiffs that is discussed in the Complaint is Golden's notification that the Phishing Attack occurred. [Complaint, ¶ 19.] But Plaintiffs do not allege that Golden's notification contained a misrepresentation. [*See, generally, id.*] Nor could the notification form the basis of Plaintiffs' NDTPA claim because it occurred ***after the Phishing Incident.*** *Bank of New York Mellon as Tr. for Certificateholders of CWALT, Inc., Alternative Loan Tr. 2005-57CB, Mortg. Pass-through Certificates, Series 2005-57CB v. Sunrise Ridge Master Homeowners Ass'n*, No. 217CV00233JADDJA, 2020 WL 2064065, at *6 (D. Nev. Apr. 28, 2020) (granting summary judgment on NDTPA claim, in part, because the plaintiff failed to show that it acted "in reliance on such representations."); *Jamil v. Caesars Entm't Corp.*, No. 2:14-CV-1363 JCM GWF, 2015 WL 1993928, at *4 (D. Nev. Apr. 30, 2015) (dismissing NDTPA claim where alleged misrepresentation occurred after events in question, and, therefore, there was no reliance).

Furthermore, Plaintiffs allege that Golden "knowingly" omitted that it (1) "failed to maintain appropriate technological and other systems to prevent unauthorized access"; (2) failed to properly train its employees to avoid email phishing scams"; (3) "failed to minimize the PII that any intrusion could compromise (i.e., less aggregation and weeding out unnecessary and stale data)"; and (4) "would fail to provide timely notice to affected consumer with accurate information so that those affected could begin minimizing the impact of the incident". [Complaint, ¶ 72.] In other words, Plaintiffs claim that Golden violated the NDTPA by failing to tell Plaintiffs that it could, at some point in the future, be the victim of a criminal phishing attack.

Plaintiffs, however, do not allege any facts that would support a finding that Golden "knew" of these alleged deficiencies before being the victim of a criminal act or that, while having such knowledge, actively withheld that information from Plaintiffs. [*See, generally,* Complaint.] And they certainly do not do so with the requisite specificity required by Rule 9(b). *Morris v. BMW of N. Am., LLC*, No. CIV.A. 13-4980 JLL, 2014 WL 793550, at *8 (D.N.J. Feb. 26, 2014) (holding that because "Plaintiff alleges no facts in support of the theory that anyone

12

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

acting on behalf of BMW possessed knowledge of the alleged defects in the BMW Navigation System and failed to disclose same to Plaintiff[,]…Plaintiff has failed to state a claim of consumer fraud under the NDTPA that is plausible on its face."). As such, Plaintiffs' NDTPA claims that are based on Golden's alleged misrepresentations and/or omissions must be dismissed.

### 2. Golden Did Not Violate a State or Federal Regulation Relating to the Sale or Lease of Goods or Services.

The only NDPTA-related allegation in Plaintiffs' complaint not involving an alleged misrepresentation or omission is the allegation that Golden violated "a state of federal regulation relating to the sale or lease of goods and services." [Complaint, ¶ 71(e).] In support of their claim, however, Plaintiffs do not identify the state or federal regulation relating to the sale or lease of goods and services that they claim Golden violated. [*See id.* at ¶¶ 69-76.]  Indeed, aside from the NDTPA itself, the only statutes cited in Plaintiffs' Complaint are the FTCA and Nevada's Data Breach Law, NRS §§ 603A.010, *et seq*.  These statutes, however, regulate something other than "the sale or lease of goods or services."

The FTCA does not relate to the sale or lease of goods or services.  "One of the purposes of the Act is to stop in their incipiency those methods of competition which fall within the meaning of the word 'unfair.'" *California Rice Indus. v. Fed. Trade Comm'n*, 102 F.2d 716, 720 (9th Cir. 1939); *see also Northam Warren Corp. v. Fed. Trade Comm'n*, 59 F.2d 196, 198 (2d Cir. 1932) (The FTCA's "purpose is to strike down at their inception practices which are unfair and which, if permitted to run their full course, would result in the creation of a monopoly and an undue restraint of trade."); *Toledo Pipe-Threading Mach. Co. v. Fed. Trade Comm'n*, 11 F.2d 337, 342 (6th Cir. 1926) ("It was the main purpose of the Federal Trade Commission Act to provide for scrutiny and restraint of those trade practices which tended towards monopoly or involved restraint of trade."). The fact that Plaintiffs allege that the "FTC has pursued over fifty enforcement actions against business" that "fail[ed] to employ reasonable data security measures" is of no import. [Complaint, ¶ 51.]  The FTCA regulates the protection of personal information once it is in the defendant's possession, regardless of how the defendant got it. *See In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1309 (N.D. Ga. 2019) (applying

FTCA to Experian, whose "business model entails aggregating data relating to consumers from various sources" (emphasis added).) Therefore, the FTCA does not relate to the "sale or lease of goods or services."

NRS Chapter 603A also does not relate to the sale or lease of goods or services. It regulates the protection of personal information and the notification procedure in the event of a data breach. See NRS 603A.210 ("A data collector that maintains records which contain personal information of a resident of this State shall implement and maintain reasonable security measures to protect those records from unauthorized access, acquisition, destruction, use, modification or disclosure."); *see also* NRS 603A.220 ("Any data collector that owns or licenses computerized data which includes personal information shall disclose any breach of the security of the system data following discovery or notification of the breach to any resident of this State whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person. The disclosure must be made in the most expedient time possible and without unreasonable delay, consistent with the legitimate needs of law enforcement, as provided in subsection 3, or any measures necessary to determine the scope of the breach and restore the reasonable integrity of the system data.").

### 3. The NDTPA Does Not Apply to Miranda's Employment Relationship with Golden.

Miranda admits in the Complaint that she "worked at PT's Gold Pub, one of [Golden's] properties, between 2015 and 2016" and that as part of her employment, she gave "her PII, including her Social Security Number, to" Golden. [Complaint, ¶ 4.] The NDTPA, however, does not apply to employment relationship.

In *Govereau v. Wellish*, No. 2:12-CV-00805-KJD, 2012 WL 5215098, at *2 (D. Nev. Oct. 19, 2012), the only case the undersigned could find that considered the NDTPA within the employment context, the court held that "[t]o adopt Plaintiff's broad definition of 'relating to the sale or lease of goods or services' [in the employment context] would expand the NDTPA far beyond its intended scope." There, the plaintiff alleged that her former employer violated the Fair Labor Standards Act by failing to pay her lawful wages and, as such, violated the NDTPA. *Id.* at

*1. Noting that the plaintiff there, like Miranda here, had "fail[ed] to cite a single case from this jurisdiction, or any of the numerous jurisdictions with similar deceptive trade practices acts, permitting an employee to sue an employer under this theory," the court granted judgment on the pleadings. *Id.* at *2. This Court should reach the same result and refuse to extend the NDTPA to employment relationships.

Ultimately, Plaintiffs have failed to allege any facts that would support a finding that Golden engaged in "consumer fraud" as defined by the NDTPA. Their NDTPA claim should, therefore, be dismissed.

## V. CONCLUSION

For the foregoing reasons, Golden respectfully request that the Court grant it Motion to Dismiss and dismiss Plaintiffs' Complaint in its entirety and with prejudice.

DATED: June 18, 2020

**BAKER & HOSTETLER LLP**

By: */s/ Casie D. Collignon*
Casie D. Collignon, Esq. (admitted *pro hac vice*)
Matthew D. Pearson, Esq. (*pro hac vice* pending)
1801 California Street, Suite 4400
Denver, Colorado 80202-2662
ccollignon@bakerlaw.com
mpearson@bakerlaw.com

**GREENBERG TRAURIG, LLP**

Mark E. Ferrario (Nevada Bar No. 1625)
10845 Griffith Peak Drive
Suite 600
Las Vegas, NV 89135
Telephone: (702) 938-6870
Facsimile: (702) 792-9002
Email: ferrariom@gtlaw.com

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on the 18th day of June, 2020, a true and correct copy of the foregoing **DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT** was electronically filed with the Clerk of the Court by using CM/ECF service which will provide copies to all counsel of record registered to receive CM/ECF notifications.

*/s/ Casie D. Collignon*

Casie D. Collignon