Don Springmeyer, Esq. (SBN 1021)
Daniel Bravo, Esq. (SBN 13078)
A. Jill Guingcangco, Esq. (SBN 14717)
**WOLF, RIFKIN, SHAPIRO,**
**SCHULMAN & RABKIN, LLP**
3556 E. Russell Road, 2nd Floor
Las Vegas, Nevada 89120
Telephone: (702) 341-5200 / Fax: (702) 341-5300
Email: dspringmeyer@wrslawyers.com
Email: dbravo@wrslawyers.com
Email: ajg@wrslawyers.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*pro hac vice*)
Yitzchak Kopel (to be admitted *pro hac vice*)
888 Seventh Avenue, Third Floor
New York, New York 10019
Telephone: (646) 837-7150 / Fax: (212) 989-9163
Email: mroberts@bursor.com
Email: ykopel@bursor.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JENNIFER MIRANDA and PATRICIA TERRY, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>      v.<br><br>GOLDEN ENTERTAINMENT (NV), INC.,<br><br>                  Defendant. | Case No.: 2:20-cv-00534-JAD-DJA<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PROVISIONAL CERTIFICATION OF NATIONWIDE SETTLEMENT CLASS, AND APPROVAL OF PROCEDURE FOR AND FORM OF NOTICE** |

Plaintiffs Jennifer Miranda and Patricia Terry ("Plaintiffs"), by and through their undersigned counsel of record, move, pursuant to Fed. R. Civ. P. 23(e), for the Court to: (i) grant preliminary approval of the proposed Class Action Settlement ("Settlement Agreement"), (ii) provisionally certify the Class for the purposes of preliminary approval, designate Plaintiffs as the Class Representatives, and appoint Yitzchak Kopel and Max S. Roberts of Bursor & Fisher,

P.A. as Class Counsel for the Class, (iii) establish procedures for giving notice to members of the Class, (iv) approve forms of notice to Class Members, (v) mandate procedures and deadlines for exclusion requests and objections, and (vi) set a date, time and place for a final approval hearing.

This motion is made on the grounds that preliminary approval of the proposed class action settlement is proper, given that each requirement of Rule 23(e) has been met.

This motion is based on Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement, Provisional Certification of Nationwide Settlement Class, and Approval of Procedure for and Form of Notice, the accompanying Declaration of Yitzchak Kopel and attachments thereto, including the Settlement Agreement, the Declarations of Jennifer Miranda and Patricia Terry, the pleadings and papers on file herein, and any other written and oral arguments that may be presented to the Court.

Dated: October 12, 2020                    Respectfully submitted,


By:  _/s/ Don Springmeyer_
Don Springmeyer, Esq. (SBN 1021)
Daniel Bravo, Esq. (SBN 13078)
A. Jill Guingcangco, Esq. (SBN 14717)
**WOLF, RIFKIN, SHAPIRO,**
**SCHULMAN & RABKIN, LLP**
3556 E. Russell Road, 2nd Floor
Las Vegas, Nevada 89120
Telephone: (702) 341-5200 / Fax: (702) 341-5300
Email: dspringmeyer@wrslawyers.com
Email: dbravo@wrslawyers.com
Email: ajg@wrslawyers.com


**BURSOR & FISHER, P.A.**
Max S. Roberts (p*ro hac vice*)
Yitzchak Kopel (to be admitted *pro hac vice*)
888 Seventh Avenue, Third Floor
New York, New York 10019
Telephone: (646) 837-7150 / Fax: (212) 989-9163
Email: mroberts@bursor.com
Email: ykopel@bursor.com

*Attorneys for Plaintiffs*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND........................................................2

I.   The Golden Entertainment Data Breach .................................................2

II.  Plaintiffs' Allegations ...............................................................................3

III. The Litigation History And Settlement Negotiations ...........................3

TERMS OF THE SETTLEMENT AGREEMENT ..........................................................4

I.   Class Definition .........................................................................................4

II.  Monetary Relief .........................................................................................5

III. Other Relief ................................................................................................5

IV.  Release .........................................................................................................6

V.   Notice And Administration Expenses .....................................................6

VI.  Incentive Awards .......................................................................................6

VII. Attorneys' Fees And Expenses .................................................................6

LEGAL STANDARD ..........................................................................................................7

ARGUMENT .......................................................................................................................8

I.   The Settlement Class Meets All Requirements Of Fed. R. Civ. P. 23(a) And 23(b)(3) ......8

     A.   Fed. R. Civ. P. 23(a)(1) – Numerosity ........................................9

     B.   Fed. R. Civ. P. 23(a)(2) – Commonality .....................................9

     C.   Fed. R. Civ. P. 23(a)(3) – Typicality ..........................................9

     D.   Fed. R. Civ. P. 23(a)(4) – Adequacy.........................................10

     E.   Fed. R. Civ. P. 23(b)(3) – Predominance And Superiority...................................11

II.  The Court Should Preliminarily Approve The Settlement Because It Is Fair, Adequate, And Reasonable ..................................................................12

A.   The Settlement Class Meets All Of The *Hanlon* Factors ......................................13

    1.   *Hanlon* Factor 1 – The Strength Of Plaintiffs' Case...................................13

    2.   *Hanlon* Factor 2 – The Risk, Expense, Complexity, And Likely Duration Of Further Litigation..................................................................................14

    3.   *Hanlon* Factor 3 – The Risk Of Maintaining Class Action Status Throughout The Trial ..................................................................................15

    4.   *Hanlon* Factor 4 – The Amount Offered In Settlement ............................15

    5.   *Hanlon* Factor 5 – The Extent Of Discovery Completed And The Stage Of The Proceedings ......................................................................................17

    6.   *Hanlon* Factor 6 – The Experience And Views Of Counsel......................17

B.   The Settlement Class Meets All Of The New Rule 23(e)(2) Factors ...................18

    1.   Rule 23(e)(2)(A) – The Class Representatives And Class Counsel Have Adequately Represented The Class ............................................................18

    2.   Rule 23(e)(2)(B) – The Proposal Was Negotiated At Arm's Length ..................................................................................................18

    3.   Rule 23(e)(2)(C) – The Relief Provided For The Class Is Adequate ..................................................................................................19

    4.   Rule 23(e)(2)(D) – The Proposal Treats Class Members Equitably Relative To Each Other..........................................................................20

III.   The Proposed Notice Plan Should Be Approved ........................................................21

CONCLUSION...............................................................................................................23

ii

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Acuna v. South Nevada T.B.A. Supply Co.*, 324 F.R.D. 367 (D. Nev. 2018) ...................................................7, 8, 9, 10

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ....................................................................................................11

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) .........................................14

*Fox v. Iowa Health System*, 2020 WL 5678704 (W.D. Wis. Sept. 16, 2020)..................................................................10

*Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ...........................................18

*Glover v. City of Laguna Beach*, 2018 WL 6131602 (C.D. Cal. Nov. 5, 2018) ..............................................................18

*Greer v. Dick's Sporting Goods, Inc.*, 2020 WL 5535399 (E.D. Cal. Sept. 15, 2020) ...................................................13

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ......................................................................................8, 11, 12

*Hefler v. Wells Fargo & Co.*, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ............................................................18, 20

*Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616 (S.D. Cal. Jan. 31, 2020) .....................................18, 19, 21

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018).....................................................11, 13, 15, 16

*In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991).........................................................14, 15

*In re Equifax Inc. Customer Data Security Breach Litig.*, 2020 WN 256132 (N.D. Ga. Mar. 17, 2020)................9, 10, 12

*In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686 (S.D.N.Y. 2019)...................................................................19, 20

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000).....................................................................................17

*In re Netflix Privacy Litig.*, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013).....................................................................15

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) .........................................................................17

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) .......................................................................................8, 19

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) .........................................................................................7, 8

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................................................................11

*In re Yahoo! Inc. Customer Data Security Breach Litig.*, 2020 WL 4212811 (N.D. Cal. July 22, 2020) .........9, 10, 11, 12

*Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650 (S.D.N.Y. 2015) ............................................................................21

*Morris v. Lifescan, Inc.*, 54 F. App'x 663 (9th Cir. 2003).............................................................................................19

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ................................................................8, 13

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968).......8

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ...................................................................................14

*Smith v. Kaiser Foundation Hospitals*, 2020 WL 5064282 (S.D. Cal. Aug. 26, 2020) ............................................13, 17

*State of Florida v. Dunne*, 915 F.2d 542 (9th Cir. 1990)..............................................................................................19

*Williams v. MGM-Pathe Commc'ns Inc.*, 129 F.3d 1026 (9th Cir. 1997)......................................................................20

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010).....................................................................11

*Young v. Polo Retail, LLC*, 2007 WL 951821 (N.D. Cal. Mar. 28, 2007) ......................................................................20

**STATE CASES**

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
    2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ..............................................................................................14

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...................................................................................................................12

Manual for Complex Litigation § 21.312 (4th ed. 2004) ...............................................................................7

Manual for Complex Litigation § 21.633 ....................................................................................................21

Newberg On Class Actions § 11.25 (1992)) .................................................................................................7

Newberg on Class Actions §11.28 .............................................................................................................10

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .....................................................................................................................14

**OUT OF STATE CASES**

Fed. R. Civ. P Rule 23(e)(1)...........................................................................................................................21

Fed. R. Civ. P. 23(a)(1)..................................................................................................................................9

Fed. R. Civ. P. 23(b)(3)..............................................................................................................................11, 21

iii

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................21
Fed. R. Civ. P. 23(e)(2).....................................................................................12
Fed. R. Civ. P. 23(e)(2)(C) ...............................................................................19
Fed. R. Civ. P.23(a)(3)........................................................................................9

Plaintiffs Jennifer Miranda and Patricia Terry ("Plaintiffs"), by and through Class Counsel,[1] respectfully submit this memorandum in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.  The Settlement Agreement (hereafter, "Settlement") is attached as Exhibit 1 to the Declaration of Yitzchak Kopel (the "Kopel Decl.") filed herewith.

## INTRODUCTION

In this putative class action, Plaintiffs allege that Defendant Golden Entertainment (NV), Inc. ("Golden" or "Defendant") was subject to a data breach due to its negligent failure to properly safeguard the information of its customers and employees.  Plaintiffs allege the data breach exposed the names, Social Security numbers, passport numbers, government ID numbers, driver's license numbers, dates of birth, usernames, passwords, payment card numbers, expiration dates, card security codes (CVV), financial account numbers, routing numbers, health insurance information, and health or treatment information" (collectively, the "personal identification information" or "PII") of Golden customers, current and former employees, and vendors.

Since filing the Complaint, the Parties have been involved in extensive settlement discussions and disclosures.  These discussions have proved fruitful, as the Parties have negotiated an exceptional agreement that delivers immediate relief to class members.  The resulting Class Action Settlement Agreement (the "Settlement") allows Class Members to recoup up to $200 in documented out-of-pocket expenses, with an aggregate cap of $250,000.  Class Members can also receive reimbursement for up to three hours of undocumented lost time, payable at $15 per hour (for a total of $45), that is not subject to the $250,000 aggregate cap.  Finally, Class Members can sign up for a free year of advanced credit monitoring, an aggregate retail value of over $3.5 million.  The advance credit monitoring includes, among other things, a policy of up to $1 million reimbursement insurance from AIG covering losses due to identify theft and stolen funds.  In short, Plaintiffs and Class Counsel have made extensive relief available to the Settlement Class, which is by all measures an excellent result.

---

[1] All capitalized terms not otherwise defined herein shall have the same definitions as set out in the Settlement Agreement.  *See* Kopel Decl. Ex. 1.

The Court should have no hesitation finding that the Settlement falls within the range of possible approval.  It is the product of extended arms'-length negotiations between experienced attorneys familiar with the legal and factual issues of this case and all Class Members are treated fairly under the terms of the Settlement.  Plaintiffs, by and through their counsel, have conducted an extensive investigation into the facts and law relating to this matter as set forth below and in the accompanying Kopel Declaration.  Plaintiffs and their counsel hereby acknowledge that in the course of their investigation they received, examined, and analyzed information, documents, and materials that they deem necessary and appropriate to enable them to enter into the Settlement on a fully informed basis.  It is an outstanding result for all Class Members.

Accordingly, Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Settlement; (2) provisionally certify the settlement class under Fed. R. Civ. P. 23(b)(3) in connection with the settlement process; (3) appoint Yitzchak Kopel and Max S. Roberts of Bursor & Fisher, P.A. ("Bursor & Fisher") as Class Counsel; (4) appoint Jennifer Miranda and Patricia Terry as the Class Representatives for the Settlement Class; and (5) approve the specific Notice of Class Action and Proposed Settlement (the "Proposed Notice") and direct distribution of the Proposed Notice.

## FACTUAL AND PROCEDURAL BACKGROUND

## I.      THE GOLDEN ENTERTAINMENT DATA BREACH

Between May 30, 2019 and October 6, 2019, Golden—a large gaming corporation that owns numerous casinos—was the subject of a data breach conducted through an email phishing incident by an unauthorized user.  First Amended Complaint (ECF No. 24) ("FAC") ¶ 17.  Through this email phishing incident, the unauthorized user obtained access to some employees' email accounts.  *Id.*  The data breach exposed the names, Social Security numbers, passport numbers, government ID numbers, driver's license numbers, dates of birth, usernames, passwords, payment card numbers, expiration dates, card security codes (CVV), financial account numbers, routing numbers, health insurance information, and health or treatment information (collectively, the "personal identification information" or "PII") of Golden customers, current and former employees, and vendors.  FAC ¶ 2.  Golden began mailing out

letters to the 17,683 individuals affected by the Phishing Attack between November 7, 2019 and January 31, 2020.  FAC ¶ 19.

## II.    PLAINTIFFS' ALLEGATIONS

Plaintiff Miranda is a former employee of one of Golden's casinos.  FAC ¶ 4.  Ms. Miranda alleges that she received a letter from Golden in or about December 2019 notifying her of the data breach, which, according to the letter, exposed her name and Social Security number. *Id.*  Ms. Miranda alleges that as a result of the data breach, she experienced identify theft in October 2019 when an unauthorized user gained access to Ms. Miranda's banking account.  *Id.*

Plaintiff Terry is a regular customer at one of Defendant's properties.  FAC ¶ 5.  Ms. Terry alleges that she received a letter from Golden in or about February 2020 notifying her of the data breach, which, according to the letter, exposed her name, Social Security number, and driver's license number.  *Id.*  Ms. Terry alleges that as a result of the data breach, she experienced identify theft in February 2020 when an unauthorized user opened up a DirecTV account in Ms. Terry's name.  *Id.*

Both Plaintiffs allege that the data breach was due to Golden's negligent failure to properly safeguard the information of its customers and employees, and to take reasonable measures to protect the personal information of Plaintiffs and members of the Class.  FAC ¶¶ 2, 22.  Plaintiffs also allege that such failures were in violation of the representations in Golden's Privacy Policy.  *Id.* ¶ 22.  Plaintiffs brought this action on behalf of themselves and the Class for actual and statutory damages, punitive damages, equitable relief, and attorneys' fees and costs. *Id.* ¶ 3; *id.* at 20-21 (Prayer for Relief).

## III.   THE LITIGATION HISTORY AND SETTLEMENT NEGOTIATIONS

On February 21, 2020, Plaintiffs, through Class Counsel, sent a letter to Golden alleging that it violated the Nevada Deceptive Trade Practices Act ("NDTPA"), Nev. Stat. §§ 598.0903, *et seq.* due to its failure to properly safeguard individual PII, which Plaintiffs allege resulted in the data breach.  On March 16, 2020, Plaintiffs filed their class action lawsuit in the United States District Court for the District of Nevada.  ECF No. 1.  Plaintiffs brought claims for (i) negligence, (ii) negligent misrepresentation, (iii) negligence per se for violation of the Federal

Trade Commission Act ("FTCA"), 15 U.S.C. § 45, (iv) negligence per se for violation of the Nevada Data Breach Law ("NDBL"), NRS §§ 603A.010, *et seq.*, (v) breach of contract, and (vi) violation of the NDTPA.  FAC ¶ 24.

From the outset of the case, the Parties engaged in direct communications, and as part of their obligations under Fed. R. Civ. P. 26, discussed the prospect of early resolution.  Indeed, the Parties agreed to four requests to extend Golden's deadline to respond to the Complaint so as to give the Parties sufficient time to negotiate a settlement.  *See* Kopel Decl. ¶ 3; ECF Nos. 10, 12, 17, 19.

After three months of negotiations it appeared as though the Parties had reached an impasse.  On June 18, 2020, Golden filed its Motion to Dismiss, which Plaintiffs responded to on July 2, 2020 by filing the First Amended Complaint.  Kopel Decl. ¶ 3.  However, these filings prompted the Parties to renew their settlement negotiations.  *Id.*  On August 13, 2020, the Parties notified the Court that they had reached a "settlement in principle" and were in the "process of memorializing their agreement."  ECF No. 30; Kopel Decl. ¶ 3.

## TERMS OF THE SETTLEMENT AGREEMENT

The key terms of the Class Action Settlement Agreement ("Settlement"), attached as Exhibit 1, are briefly summarized as follows:

## I.   CLASS DEFINITION

The "Settlement Class" or "Settlement Class Members" is defined as:  "all persons who were notified by mail of the Phishing Attack [data breach] announced by Golden in 2019"[2] Settlement ¶ 1.24.

---

[2] The Settlement Class specifically excludes: (i) Golden and its respective officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Phishing Attack or who pleads *nolo contender* to any such charge.

4

**II.     MONETARY RELIEF**

All Class Members who submit a Valid Claim can receive reimbursement for documented out-of-pocket expenses, not to exceed $200 per Class Member, that were incurred as a result of the Phishing Attack.  Settlement ¶ 2.1.  Golden shall reimburse Settlement Class Members for up to, but not exceeding, $250,000 in the aggregate for documented out of pocket losses.  *Id.*

Settlement Class Members are also eligible to receive up to three hours of lost time spent dealing with issues arising out of the Phishing Attack (calculated at the rate of $15 per hour). Settlement ¶ 2.1.  Class Members must have spent at least one (1) half-hour dealing with issues arising out of the Phishing Attack.  *Id.*  All partial hour increments shall be rounded to the nearest whole hour (i.e., an individual who spent 1.2 hours responding to the Phishing Attack would receive compensation for one hour, while an individual who spent 1.5 hours responding to the Phishing Attack would receive compensation for two hours).  *Id.*  No documentation other than a brief description of their actions shall be required for Settlement Class Members to receive compensation for attested time.  *Id.*  Claims made for lost time can be combined with claims made for out-of-pocket expenses and, together with the out-of-pocket expenses, are subject to the $200 cap for individuals.  *Id.*  Claims for lost time will not apply to the $250,000 cap on out-of-pocket expenses.  *Id.*

**III.    OTHER RELIEF**

All Class Members are eligible for one free year of "Identity Guard Total powered by IBM Watson" protection, which includes, among other things, a policy of up to $1 million reimbursement insurance from AIG covering losses due to identify theft and stolen funds.  This plan is publicly sold for $16.67 per month, making the yearly benefit made available to Settlement Class Members of $200.04 per Settlement Class Member, for an aggregate value of over $3.5 million.[3]  Settlement Agreement ¶ 2.2.  For Class Members who opted to receive the

---

[3] Identity Guard Total powered by IBM Watson costs $16.67 per month per person, or $200.04 per year per person.  https://www.identityguard.com/plans/total.  Accordingly, it would cost Golden $3,537,307.32 to provide this credit monitoring to all 17,683 Settlement Class Members

1   one year of credit monitoring initially offered by Golden, as described above, this credit

2   monitoring shall be in addition to that year.  *Id.*  The full benefits of "Identity Guard Total

3   powered by IBM Watson" are described in detail in the Settlement.  *Id.*

4   **IV.   RELEASE**

5        In exchange for the relief described above, Golden and each of its related and affiliated

6   entities as well as all "Released Persons" as defined in Settlement ¶ 1.20 will receive a full

7   release of all claims arising out of or related to the Phishing Attack.  *See* Settlement ¶¶ 1.18-1.20,

8   6.1-6.3 for full release language.

9   **V.   NOTICE AND ADMINISTRATION EXPENSES**

10        All costs for notice to the Settlement Class as required under ¶¶ 3.1 and 3.2, Costs of

11   Claims Administration under ¶¶ 8.1, 8.2, and 8.3, and the costs of Dispute Resolution described

12   in ¶ 2.3, shall be paid by Golden.  Settlement ¶ 2.4.

13   **VI.   INCENTIVE AWARDS**

14        In recognition for their efforts on behalf of the Settlement Class, Golden has agreed that

15   Plaintiffs Miranda and Terry may receive, subject to Court approval, incentive awards of $4,500

16   each from the Settlement Fund, as appropriate compensation for their time and effort serving as

17   Class Representatives and as parties to the Litigation.  Settlement ¶ 7.3.  Any incentive awards

18   will be paid by Golden separately and apart from the class relief, and will not derogate in any

19   way from the benefits received by class members.  *Id.* ¶¶ 3.2, 7.3.

20   **VII.   ATTORNEYS' FEES AND EXPENSES**

21        Golden has agreed to pay, subject to Court approval, the amount of $225,000.00 to Class

22   Counsel for attorneys' fees, inclusive of any costs and expenses of the Litigation.  Settlement ¶

23   7.2.  Like the requested incentive awards, any awarded attorneys' fees and expenses will be paid

24   by Golden separately and apart from the class relief, and will not derogate in any way from the

25   benefits received by class members.  *Id.* ¶¶ 3.2, 7.2.

26

27

28   ($200.04 * 17,683 = $3,537,307.32).

1

**LEGAL STANDARD**

2      Approval of class action settlements involves a two-step process.  First, the Court must

3 make a preliminary determination whether the proposed settlement appears to be fair and is

4 "within the range of possible approval."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th

5 Cir. 2008); *Acuna v. South Nevada T.B.A. Supply Co.*, 324 F.R.D. 367, 379 (D. Nev. 2018).  If

6 so, notice can be sent to class members and the Court can schedule a final approval hearing

7 where a more in-depth review of the settlement terms will take place.  *See* MANUAL FOR

8 COMPLEX LITIGATION § 21.312 at 293-96 (4th ed. 2004).

9      At the preliminary approval stage, "[t]he court is really only concerned with whether the

10 proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as

11 unduly preferential treatment of class representatives or segments of the class, or excessive

12 compensation of attorneys."  *Acuna*, 324 F.R.D. at 379 (internal quotations omitted).  Notice of a

13 settlement should be disseminated where "the proposed settlement appears to be the product of

14 serious, informed, non collusive negotiations, has no obvious deficiencies, does not improperly

15 grant preferential treatment to class representatives or segments of the class, and falls within the

16 range of possible approval."  NEWBERG ON CLASS ACTIONS § 11.25 (1992)).  Preliminary

17 approval does not require an answer to the ultimate question of whether the proposed settlement

18 is fair and adequate, for that determination occurs only after notice of the settlement has been

19 given to the members of the settlement class.  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d

20 1078, 1079 (N.D. Cal. 2007) (finding that "[t]he question currently before the court is whether

21 this settlement should be preliminarily approved" for the purposes of notifying the putative class

22 members of the proposed settlement and proceeding with a fairness hearing, which requires the

23 court to consider whether the settlement appears to be fair and "*falls within the range of possible*

24 *approval*") (emphasis added).

25      Nevertheless, a review of the standards applied in determining whether a settlement

26 should be given final approval is helpful to the determination of preliminary approval.  One such

27 standard is the strong judicial policy of encouraging compromises, particularly in class actions.

28 *See In re Syncor*, 516 F.3d at 1101 (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d

7

615 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983)).  While the Court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  In fact, when a settlement is negotiated at arm's-length by experienced counsel, there is a presumption that it is fair and reasonable.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Ultimately, the Court's role is to ensure that the settlement is fundamentally fair, reasonable and adequate.  *See In re Syncor*, 516 F.3d at 1100.

Beyond the public policy favoring settlements, the principal consideration in evaluating the fairness and adequacy of a proposed settlement is the likelihood of recovery balanced against the benefits of settlement.  "[B]asic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation."  *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968).  That said, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice*, 688 F.2d at 625.

## **ARGUMENT**

## I.   THE SETTLEMENT CLASS MEETS ALL REQUIREMENTS OF FED. R. CIV. P. 23(A) AND 23(B)(3)

"Before evaluating a proposed settlement under Rule 23(e), the court must determine whether the settlement class meets the requirements of Rule 23(a) applicable to all class actions: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation."  *Acuna*, 324 F.R.D. at 379.  "Once subsection (a) is satisfied, the putative class must then fulfill the requirements of Rule 23(b)(3)—that the questions of law or fact common to the class members predominate over any questions affecting individual members, and that a class action is superior."  *Id.* at 380.  The Settlement Class meets all of these requirements.

### A.  Fed. R. Civ. P. 23(a)(1) – Numerosity

A proposed class must be so numerous that joinder of all members individually is impractical.  Fed. R. Civ. P. 23(a)(1).  "Courts have routinely found that the numerosity requirement is met when the class comprises 40 or more members."  *Acuna*, 324 F.R.D. at 380.  Here, the Settlement Class is composed of 17,683 individuals affected by the Phishing Attack.  *See* Factual And Procedural Background § II.A, *supra*.  Accordingly, numerosity is easily met.

### B.  Fed. R. Civ. P. 23(a)(2) – Commonality

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury."  *Acuna*, 324 F.R.D. at 380 (citing *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)).  "This requirement has been construed permissively, and all questions of fact and law need not be common to satisfy the rule."  *In re Yahoo! Inc. Customer Data Security Breach Litig.* ("*In re Yahoo*"), 2020 WL 4212811, at *2 (N.D. Cal. July 22, 2020) (internal quotations omitted).  "Indeed, "for purposes of Rule 23(a)(2), even a single common question will do."  *Id.* (internal quotations omitted).

"Courts … have previously addressed this requirement in the context of data breach class actions and found it readily satisfied."  *In re Equifax Inc. Customer Data Security Breach Litig.* ("*In re Equifax*"), 2020 WL 256132, at *12 (N.D. Ga. Mar. 17, 2020) (collecting cases); *In re Yahoo*, 2020 WL 4212811, at *3 (finding commonality satisfied in data breach class action). "The same sorts of common issues are present here, including whether [Golden] had a legal duty to adequately protect class members' personal information; whether [Golden] breached that legal duty; and whether [Golden] knew or should have known that class members' personal information was vulnerable to attack."  *In re Equifax*, 2020 WL 256132, at *12.  Thus, commonality is satisfied.

### C.  Fed. R. Civ. P. 23(a)(3) – Typicality

Fed. R. Civ. P.23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical."  *Acuna*, 324 F.R.D. at 380-81.  "The class

representative must be part of the class and possess the same interest and suffer the same injury as class members." *Id.*  Here, "Plaintiffs suffered the same baseline harm that all members of the proposed class suffered—their personal data was exposed during the data breaches, exposing them to the threat of future identity theft and fraud."  *Fox v. Iowa Health System*, 2020 WL 5678704, at *2 (W.D. Wis. Sept. 16, 2020); *In re Yahoo*, 2020 WL 4212811, at *3 ("[T]he Settlement Class Representatives, like the Settlement Class as a whole, were all Yahoo users who allegedly either suffered identity theft and/or were placed at substantial risk for identity theft.  Accordingly, Yahoo's allegedly inadequate data security harmed the Settlement Class Representatives in a common way as the rest of the Settlement Class Members." (internal citations omitted)).  Typicality is therefore met.

### D.  Fed. R. Civ. P. 23(a)(4) – Adequacy

"The determination under Rule 23(a)(4) whether the representative parties will fairly and adequately represent the class requires resolution of two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Acuna*, 324 F.R.D. at 381.  Adequacy is presumed where a fair settlement was negotiated at arm's-length.  NEWBERG ON CLASS ACTIONS §11.28, at 11-59.   Adequacy "has been readily met in nationwide data breach class action settlements."  *In re Equifax*, 2020 WL 256132, at *12 (collecting cases).

Class Counsel have vigorously and competently pursued the Class Members' claims.  The arm's-length settlement negotiations that took place and the investigation they undertook demonstrate that Class Counsel adequately represent the Class.  Moreover, the named Plaintiffs and Class Counsel have no conflicts of interests with the Class.  *See* Declarations of Jennifer Miranda and Patricia Terry, at ¶ 7.  Rather, the named Plaintiffs, like each absent Class Member, have a strong interest in proving Defendant's common course of conduct, and obtaining redress.  *See id.*  In pursing this litigation, Class Counsel, as well as the named Plaintiffs, have advanced and will continue to advance and fully protect the common interests of all members of the Class.  *See id.*  Class Counsel have extensive experience and expertise in prosecuting complex class actions.  Class Counsel are active practitioners who are highly experienced in class action

litigation.  *See* Kopel Decl. Ex. 4 (firm resume of Bursor & Fisher, P.A.).  Accordingly, Rule 23(a)(4) is satisfied.

### E.  Fed. R. Civ. P. 23(b)(3) – Predominance And Superiority

Fed. R. Civ. P. 23(b)(3) requires Plaintiffs to prove "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Beginning with predominance, predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication."  *Hanlon*, 150 F.3d at 1022.  As the U.S. Supreme Court has explained, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Here, "Plaintiffs' case for liability depends in part on whether [Golden] used reasonable data security to protect Plaintiffs' Personal Information, and on whether [Golden] provided timely notice in connection with the Data Breach[].  These questions can be resolved using the same evidence for all Settlement Class Members and all claims arise out of a common course of conduct by [Golden]."  *In re Yahoo*, 2020 WL 4212811, at *7.  "Indeed, the focus on a defendant's security measures in a data breach class action is the precise type of predominant question that makes class-wide adjudication worthwhile."  *Id.* (internal citations omitted) (collecting cases); *In re Anthem, Inc. Data Breach Litig.* ("*In re Anthem*"), 327 F.R.D. 299, 312 (N.D. Cal. 2018) ("[T]he focus would remain on the extent and sufficiency of the specific security measures that Anthem employed.  This is the precise type of predominant question that makes class-wide adjudication worthwhile.").  Thus, predominance is easily met.

Turning to superiority, "[t]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy."  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).  "In cases where plaintiffs are unable to proceed individually because the disparity between litigation costs and the recovery sought is too high, the class-action device may be an effective means to pool claims

which would be uneconomical to litigate individually." *In re Yahoo*, 2020 WL 4212811, at \*7.

"Here, it is inconceivable that the vast majority of class members would be interested in controlling the prosecution of their own actions.  The cost of doing so, especially for class members who do not claim out-of-pocket losses, would dwarf even a full recovery at trial … Given the technical nature of the facts, the volume of data and documents at issue, and the unsettled area of the law, it would not take long for an individual plaintiff's case to be hopelessly submerged financially." *In re Equifax*, 2020 WL 256132, at \*14 (finding superiority met in a data breach class action).  Therefore, "[c]lass treatment is the superior method of adjudicating the consumer claims arising from the data breach because the issues cannot practically be resolved through millions of individual trials or settlement negotiations.  *In re Yahoo*, 2020 WL 4212811, at \*8 (collecting cases).  Accordingly, superiority is met.

## II.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT BECAUSE IT IS FAIR, ADEQUATE, AND REASONABLE

Fed. R. Civ. P. 23(e)(2) provides that "the court may approve [a proposed class action settlement] only after a hearing and on finding that it is fair, reasonable, and adequate."  When making this determination, the Ninth Circuit has instructed district courts to balance several factors:  (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; and (6) the experience and views of counsel.  *Hanlon*, 150 F.3d at 1026 (the "*Hanlon* Factors").[4]  "These factors substantively track those provided in 2018 amendments to Rule 23(e)(2), under which the court may approve a settlement only after considering whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

---

[4] In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class members to the proposed settlement."  *Hanlon*, 150 F.3d at 1026.  This consideration is more germane to final approval, and will be addressed at the appropriate time.

(i)     the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other."

*Greer v. Dick's Sporting Goods, Inc.*, 2020 WL 5535399, at *2 (E.D. Cal. Sept. 15, 2020).  The new Rule 23(e) factors are "not intended to 'displace' any factors developer over the years in the circuit courts."  *Smith v. Kaiser Foundation Hospitals*, 2020 WL 5064282, at *9 (S.D. Cal. Aug. 26, 2020) (citing Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment).

Here, the Settlement Class meets both the *Hanlon* Factors and the new Rule 23(e)(2) factors.

### A.  The Settlement Class Meets All Of The *Hanlon* Factors

#### 1.   *Hanlon Factor 1 – The Strength Of Plaintiffs' Case*

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice."  *Officers for Justice*, 688 F.2d at 625 (internal quotations omitted).  Further, "[c]ourts have noted that legal uncertainty supports approval of a settlement." *In re Anthem*, 327 F.R.D. at 317.

Here, although Plaintiffs and Class Counsel had confidence in their claims, a favorable outcome was not assured.  Kopel Decl. ¶ 10.  They also recognize that they would face risks on a motion to dismiss, at class certification, summary judgment, and trial.  *Id*.  This is particularly true in a data breach case such as this one, which is a still a relatively undeveloped field of law. *In re Anthem*, 327 F.R.D. at 317 (finding this factor met and noting "[d]ata-breach litigation is in its infancy with threshold issues still playing out in the courts").  Defendants vigorously deny Plaintiffs' allegations and assert that neither Plaintiffs nor the Class suffered any harm or damages.  In addition, Defendants would no doubt present a vigorous defense at trial, and there is no assurance that the Class would prevail – or even if they did, that they would not be able to

13

1    obtain an award of damages significantly more than achieved here absent such risks.  Thus, in

2    the eyes of Class Counsel, the proposed Settlement provides the Class with an outstanding

3    opportunity to obtain significant relief at this stage in the litigation.  Kopel Decl. ¶ 10.  The

4    Settlement also abrogates the risks that might prevent them from obtaining any relief.  *Id.*

5    Accordingly, this factor is met.

6              2.   *Hanlon Factor 2 – The Risk, Expense, Complexity, And Likely*
                   *Duration Of Further Litigation*
7

8              As referenced above, proceeding in this litigation in the absence of settlement poses

9    various risks such as failing to certify a class, having summary judgment granted against

10   Plaintiffs, or losing at trial.  Such considerations have been found to weigh heavily in favor of

11   settlement.  *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *Curtis-*

12   *Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008)

13   ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and

14   will produce a prompt, certain, and substantial recovery for the Plaintiff class.").  These risks are

15   underscored by the uncertainty apparent in the still-developing field of data breach law.  Even

16   assuming that Plaintiffs were to survive summary judgment—let alone a Motion to Dismiss—

17   they would face the risk of establishing liability at trial in light of conflicting expert testimony

18   between their own expert witnesses and Defendants' expert witnesses.  In this "battle of experts,"

19   it is virtually impossible to predict with any certainty which testimony would be credited, and

20   ultimately, which expert version would be accepted by the jury.  The experience of Class

21   Counsel has taught them that these considerations can make the ultimate outcome of a trial

22   highly uncertain.

23             Moreover, even if Plaintiffs prevailed at trial, in light of the possible damage theories that

24   could be presented by both sides, there is a substantial likelihood that Class Members may not be

25   awarded significantly more than is offered to them under this Settlement on an individual basis.

26   For example, in *In re Apple Computer Sec. Litig.*, 1991 WL 238298, at *1 (N.D. Cal. Sept. 6,

27   1991), the jury rendered a verdict for plaintiffs after an extended trial.  Based on the jury's

28   findings, recoverable damages would have exceeded $100 million.  However, weeks later, Judge

Ware overturned the verdict, entering judgment notwithstanding the verdict for the individual defendants, and ordered a new trial with respect to the corporate defendant. *Id.* By settling, Plaintiffs and the Class avoid these risks, as well as the delays and risks of the appellate process. "The negative effects of delay are especially acute in" the context of data breaches, given the possibility for identity theft, financial harm, and other effects for some years after the data breach. *In re Anthem*, 327 F.R.D. at 318. Therefore, this factor also weighs in favor of approving the settlement.

### 3. Hanlon Factor 3 – The Risk Of Maintaining Class Action Status Throughout The Trial

In addition to the risks of continuing the litigation, Plaintiffs would also face risks in certifying a class and maintaining class status through trial. Even assuming that the Court were to grant a motion for class certification, the class could still be decertified at any time. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted). From their prior experience, Class Counsel anticipates that Defendants would likely appeal any certification decision pursuant to Rule 23(f), and/or move for decertification at a later date. And the risk of decertification in a data breach case is more palpable given "the dearth of precedent" on non-settlement data breach classes. *In re Anthem*, 327 F.R.D. at 318. "These potential difficulties with maintaining class certification in this case counsel in favor of approving the settlement." *Id*.

### 4. Hanlon Factor 4 – The Amount Offered In Settlement

By any measure, the Settlement here offers meaningful relief for the Settlement Class. First, the settlement allows each of the 17,683 Settlement Class Members to recoup up to three hours of undocumented lost time, compensable at $15 per hour for a total of up to $45. Settlement ¶ 2.1. This equates to $795,735 being available to Settlement Class Members to compensate them for lost time. No documentation of this lost time will be required to file a claim: class members will solely need to complete affidavits attesting to the claimed time.

Second, Golden has agreed to compensate Settlement Class Members for their out-of-pocket expenses up to $250,000 in the aggregate. *Id*. Finally, Golden has agreed to provide an

15

additional year of credit monitoring through "Identity Guard Total powered by IBM Watson," which includes, among other things, a $1 million insurance policy per Settlement Class Member, and has an aggregate retail value of over $3.5 million.  Settlement ¶ 2.2.  Accordingly, after incorporating the costs of settlement administration and the requested awards to Plaintiffs and Class Counsel, the Settlement provides over $4.5 million in value to the Settlement Class, which is extraordinary by any measure.  Kopel Decl. ¶ 5.

The outstanding results of this settlement are particularly apparent in comparison to class settlements over larger data breaches[5]:

| Case | Size | Out-Of Pocket Reimbursement | Lost Time Reimbursement | Credit Monitoring |
|------|------|-----------------------------|-------------------------|-------------------|
| *Miranda v. Golden Entertainment (NV), Inc.*, Case No. 2:20-cv-00534 (D. Nev.) | 17,683 | Up to $200 documented per class member, capped at $250,000 in aggregate | Up to three hours, $15 per hour (total of $45), undocumented, not subject to aggregate cap | One free year of "Identity Guard Total powered by IBM Watson" credit monitoring, including a $1 million AIG insurance policy for losses from data breach |
| *Johansson-Dohrmann v. CBR Systems, Inc.*, Case No. 3:12-cv-01115 (S.D. Cal.) | ~292,000 | Aggregate cap of $500,000 for all documented out of pocket expenses, $200 cap per class member for cost of obtaining credit monitoring | $10 per hour, no hour cap, documented, subject to $500,000 aggregate cap | Two free years of ProtectMyID Alert credit monitoring |
| *Smith v. ComplyRight, Inc.*, Case No. 1:18-cv-04990 (N.D. Ill.) | ~663,000 | Estimated $50 cash payment per class member from $3.025 million fund, no documentation required | Estimated $50 cash payment from $3.025 million fund, no documentation required | Two free years of MyIDCare credit monitoring |

_____

[5] The below-referenced settlement agreements have been attached to the Kopel Decl. as Exs. 5-8.

| Case | Size | Out-Of Pocket Reimbursement | Lost Time Reimbursement | Credit Monitoring |
|---|---|---|---|---|
| *Bray v. Gamestop Corp.*, Case No. 1:17-cv-01365 (D. Del.) | ~1.3 million | Up to $235 per class member in documented out-of-pocket expenses, no aggregate cap | Up to three hours of documented lost time per class member, compensable at $15 per hour (total of $45) | None |
| *In re LinkedIn User Privacy Litig.*, Case No. 5:12-cv-03088 (N.D. Cal.) | ~6.5 million | Maximum payment of $50 from $1.25 million common fund, no documentation | Maximum payment of $50 from $1.25 million common fund, no documentation | None |

> 5.   *Hanlon Factor 5 – The Extent Of Discovery Completed And The Stage Of The Proceedings*

Under this factor, courts evaluate whether class counsel had sufficient information to make an informed decision about the merits of the case.  See *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  Although the litigation is technically in the early stages, the Settlement came after six months of numerous telephonic and written discussions regarding Plaintiffs' allegations, discovery and settlement.  Kopel Decl. ¶ 3.  The Settlement is the result of fully-informed negotiations, and Class Counsel's experience in similar matters, as well as the efforts made by counsel on both sides, confirms that they are sufficiently well apprised of the facts of this action, and the strengths and weaknesses of their respective cases, to make an intelligent analysis of the proposed settlement.  This *Hanlon* Factor thus also weighs in favor of preliminary approval.

> 6.   *Hanlon Factor 6 – The Experience And Views Of Counsel*

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).  Deference to Class Counsel's evaluation of the Settlement is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *Rodriguez*, 563 F.3d at 967.  Here, the Settlement was negotiated by counsel with extensive experience in class action litigation.

*See* Kopel Decl. Ex. 4 (firm resume of Bursor & Fisher, P.A.).  Based on their experience, Class Counsel concluded that the Settlement provides exceptional results for the Class while sparing the Class from the uncertainties of continued and protracted litigation.  This factor is therefore also met.

### B.  The Settlement Class Meets All Of The New Rule 23(e)(2) Factors

#### 1.  *Rule 23(e)(2)(A) – The Class Representatives And Class Counsel Have Adequately Represented The Class*

"The Ninth Circuit has explained that 'adequacy of representation ... requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"  *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018) (quoting *In re Mego Financial Corp. Sec. Litig.*, 214 F.3d at 462).  Here, this prong is met for the same reasons as Plaintiffs and Class Counsel met the adequacy prong under Fed. R. Civ. P. 23(a)(4).  *See* Argument § I.D, *supra*; *see also Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *5 (S.D. Cal. Jan. 31, 2020) ("Because the Court found that adequacy under Rule 23(a)(4) has been satisfied above, due to the similarity, the adequacy factor under Rule 23(e)(2)(A) is also met.").

#### 2.  *Rule 23(e)(2)(B) – The Proposal Was Negotiated At Arm's Length*

A court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery."  *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez*, 563 F.3d at 965).  Here, both Class Counsel and counsel for Defendant are experienced in class action litigation, and were "thoroughly familiar with the applicable facts, legal theories, and defenses on both sides."  *Hilsley*, 2020 WL 520616, at *5.  Further, a settlement was reached after six months of extensive negotiations.  *See* Kopel Decl. ¶ 3; *Glover v. City of Laguna Beach*, 2018 WL 6131602, at *2 (C.D. Cal. Nov. 5, 2018) (granting preliminary approval where "this settlement was the product of *extensive* arms-length negotiations" (emphasis in original)).  Thus, this prong is met.

### 3. *Rule 23(e)(2)(C) – The Relief Provided For The Class Is Adequate*

Fed. R. Civ. P. 23(e)(2)(C) requires that the Court consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." "The amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement." *Hilsley*, 2020 WL 520616, at *6.

As to "the costs, risks, and delay of trial and appeal," Plaintiffs established above that this factor is met. *See* Argument §§ II.A.1-II.A.3, *supra*.

As to "the effectiveness of any proposed method of distributing relief to the class," "[t]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." *Hilsley*, 2020 WL 520616, at *7. As described *infra*, the proposed notice plan and claims procedure is straightforward and comports with due process. *See* Argument § III, *infra*. The plan was proposed by experienced and competent counsel and ensures "the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 695 (S.D.N.Y. 2019) (internal quotations omitted).

As to "the terms of any proposed award of attorney's fees," Class Counsel will petition this Court for an award of $225,000.00 in attorneys' fees, inclusive of any costs and expenses of the Litigation. Under the common fund doctrine, courts typically award attorneys' fees based on a percentage of the total settlement. *See State of Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming attorney's fee award of 33% of the recovery); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming attorney's fee award of 33% of the recovery). To calculate attorneys' fees based on the percentage of the benefit, the Court must first determine the value of the Settlement Fund. In doing so, the Court should only consider the amount *made available* to the Class, rather

1    than the total monetary amount *distributed* to the Class.  Indeed, Ninth Circuit precedent requires

2    courts to award class counsel fees based on the total benefits being made available rather than the

3    amount actually paid out.  *Young v. Polo Retail, LLC*, 2007 WL 951821, at *8 (N.D. Cal. Mar.

4    28, 2007) ("The Ninth Circuit, however, bars consideration of the class's actual recovery in

5    assessing the fee award"); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir.

6    1997) (ruling that a district court abused its discretion in basing attorney fee award on actual

7    distribution to class instead of amount being made available).  Here, Class Counsel has made

8    over $4.5 million in value available to the Settlement Class:  $250,000 in out-of-pocket expense

9    reimbursement, up to $45 per class member for undocumented lost time, totaling $795,735, and

10   one free year of "Identity Guard Total powered by IBM Watson" credit monitoring, which

11   includes, among other things, a $1 million insurance policy per Settlement Class Member, and

12   which carries a retail value of over $3.5 million.  Class Counsel's requested fee of $225,000 is

13   therefore more than reasonable, as it constitutes only five percent (5%) of the total value

14   provided to the class, far below the Ninth Circuit's "25% of the common fund as a benchmark

15   award for attorney fees."  *Hanlon*, 150 F.3d at 1029.

16         As to "any agreement required to be identified by Rule 23(e)(3)," or "any agreement

17   made in connection with the proposal," *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 696,

18   no such agreement exists in this case other than the Settlement.

19         In light of the foregoing, the Settlement provides adequate relief to the Settlement Class

20   under Rule 23(e)(2)(C).

21              *4.   Rule 23(e)(2)(D) – The Proposal Treats Class Members Equitably
                     Relative To Each Other*

22

23         Under this factor, courts consider whether the Settlement "improperly grant[s]

24   preferential treatment to class representatives or segments of the class."  *Hefler*, 2018 WL

25   6619983, at *8.  Here, each Settlement Class Member may seek the same relief under the

26   Settlement:  reimbursement for documented out-of-pocket expenses, reimbursement for

27   undocumented lost time, and one free year of "Identity Guard Total powered by IBM Watson"

28   credit monitoring.  To the extent that the total out-of-pocket expenses claimed exceeds $250,000,

     each Settlement Class Member's claim will be reduced on a *pro rata* basis.  Settlement ¶ 2.1.

                                              20

1   Such *pro rata* distributions have been found fair and reasonable.  *Hilsley*, 2020 WL 520616, at

2   *7 ("This pro rata distribution ensures that Settlement Class Members will receive the maximum

3   amount of the settlement fund and that no money will revert back to Defendant."); *Meredith*

4   *Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a *pro rata*

5   distribution plan "appears to treat the class members equitably … and has the benefit of

6   simplicity").  Thus, this Rule 23(e)(2) factor is also met.

7   **III.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED**

8          Once preliminary approval of a class action settlement is granted, notice must be directed

9   to class members.  For class actions certified under Rule 23(b)(3), including settlement classes

10  like this one, "the court must direct to class members the best notice that is practicable under the

11  circumstances, including individual notice to all members who can be identified through

12  reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  In addition, Rule 23(e)(1) applies to any class

13  settlement and requires the Court to "direct notice in a reasonable manner to all class members

14  who would be bound by a proposal."  Fed R. Civ. P Rule 23(e)(1)

15         When a court is presented with class notice pursuant to a settlement, both the class

16  certification notice and notice of settlement may be combined in the same notice.  MANUAL FOR

17  COMPLEX LITIGATION § 21.633 at 321-22 ("For economy, the notice under Rule 23(c)(2) and the

18  Rule 23(e) notice are sometimes combined.").  This notice allows Class Members to decide

19  whether to opt out of or participate in the class and/or to object to the Settlement and argue

20  against final approval by the Court.  *Id*.  The proposed notice program here informs the Class of

21  their rights and includes a comprehensive plan for direct notice, a settlement website, and a toll-

22  free help line.  Settlement Class Members can also complete and submit the Claim Form

23  electronically, which provides for ease of access.  *Hilsley*, 2020 WL 520616, at *7 ("The claims

24  process is straightforward and allows Settlement Class members to make a claim by submitting a

25  valid and timely Claim Form to the Settlement Administrator without complication.")

26         The notice accurately informs Class Members of the salient terms of the Settlement, the

27  Class to be certified, the final approval hearing and the rights of all parties, including the rights

28  to file objections and to opt out of the class.  In addition, the notice provides information on how

1 Class Members can object and opt out of the Class and to send those objections to the Court,
2 information on how Class Members may access the case docket through the Court's Public
3 Access to Court Electronic Records ("PACER"), and the contact information of Class Counsel.
4 The Parties in this case have created and agreed to perform the following forms of notice, which
5 will satisfy both the substantive and manner of distribution requirements of Rule 23 and due
6 process. *See* Kopel Decl. Exs. 2-3.

7     **U.S. Mail Notice:**  A notice substantially in the form attached as Exhibit E to the
8 Settlement shall mailed to the last known mailing address of any Class Member whose contact
9 information is available to Golden.  Settlement ¶ 3.2(e).  In the event that subsequent to the first
10 mailing of a Short Notice, and at least fourteen (14) days prior to the Opt-Out and Objection
11 Deadline, a Summary Notice is returned to the Claims Administrator by the USPS because the
12 address of the recipient is no longer valid (*i.e.*, the envelope is marked "Return to Sender" and
13 does not contain a new forwarding address), the Claims Administrator shall perform a standard
14 skip trace, in the manner that the Claims Administrator customarily performs skip traces, in an
15 effort to attempt to ascertain the current address of the particular Settlement Class Member in
16 question and, if such an address is ascertained, the Claims Administrator will re-send the Class
17 Notice within seven (7) days of receiving such information.  *Id*.

18     **Settlement Website:**  A settlement website will be maintained by the Claims
19 Administrator and contain the following information:  (i) the Long Form Notice; (ii) the Claim
20 Form; (iii) the Preliminary Approval Order; (iv) the Settlement Agreement; (v) the operative
21 First Amended Class Action Complaint filed in the Litigation; and (vi) any other materials
22 agreed upon by the Parties and/or required by the Court.  Settlement ¶ 3.2(d).  The Settlement
23 Website shall provide Settlement Class Members with the ability to complete and submit the
24 Claim Form electronically.  A toll-free help line shall also be established to provide Class
25 Members with additional information about the Settlement.  *Id.* at ¶ 3.2(g).

26     **CAFA Notice:**  The parties shall also cause to be disseminated the notice to public
27 officials required by the Class Action Fairness Act ("CAFA").  *See* Settlement ¶ 3.5.

28     Golden shall pay for providing notice to the Settlement Class in accordance with the

Preliminary Approval Order, and the costs of such notice, together with the Costs of Claims Administration.  Settlement ¶ 3.2.  These proposed methods of giving notice are appropriate because they provide a fair opportunity for Class Members to obtain full disclosure of the conditions of the Settlement and to make an informed decision regarding the proposed Settlement.  Thus, the notices and notice procedures amply satisfy the requirements of due process.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Preliminary Approval.

Dated: October 12, 2020                         Respectfully submitted,

By: */s/ Don Springmeyer*
**WOLF, RIFKIN, SHAPIRO,**
**SCHULMAN AND RABKIN, LLP**
Don Springmeyer, Esq. (SBN 1021)
Daniel Bravo, Esq. (SBN 13078)
A. Jill Guingcangco, Esq. (SBN 14717)
3556 E Russell Rd, Second Floor
Las Vegas, Nevada 89120
Telephone: (702) 341-5200 / Fax: (702) 341-5300
Email: dspringmeyer@wrslawyers.com
Email: dbravo@wrslawyers.com
Email: ajg@wrslawyers.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*pro hac vice*)
Yitzchak Kopel (to be admitted *pro hac vice*)
888 Seventh Avenue, Third Floor
New York, New York 10019
Telephone: (646) 837-7150 / Fax: (212) 989-9163
Email: mroberts@bursor.com
Email: ykopel@bursor.com

*Attorneys for Plaintiffs*

1

**<u>CERTIFICATE OF SERVICE</u>**

2      I hereby certify that on this 12th day of October, 2020, a true and correct copy

3 of **PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR**

4 **PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PROVISIONAL**

5 **CERTIFICATION OF NATIONWIDE SETTLEMENT CLASS, AND APPROVAL OF**

6 **PROCEDURE FOR AND FORM OF NOTICE** was served via the United States District

7 Court CM/ECF system on all parties or persons requiring notice.

8                    By    */s/ Christie Rehfeld*

9                         Christie Rehfeld, an Employee of
                         WOLF, RIFKIN, SHAPIRO, SCHULMAN &
10                        RABKIN, LLP

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28