Bradley S. Schrager, Esq. (SBN 10217)
Daniel Bravo, Esq. (SBN 13078)
A. Jill Guingcangco, Esq. (SBN 14717)
**WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP**
3556 E. Russell Road, 2nd Floor
Las Vegas, Nevada 89120
Telephone: (702) 341-5200 / Fax: (702) 341-5300
Email: dbravo@wrslawyers.com
Email: ajg@wrslawyers.com

**BURSOR & FISHER, P.A.**
Yitzchak Kopel (*pro hac vice*)
Max S. Roberts (*pro hac vice*)
888 Seventh Avenue, Third Floor
New York, New York 10019
Telephone: (646) 837-7150 / Fax: (212) 989-9163
Email: ykopel@bursor.com
Email: mroberts@bursor.com

*Class Counsel*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JENNIFER MIRANDA and PATRICIA TERRY, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

GOLDEN ENTERTAINMENT (NV), INC.,

Defendant.

Case No.: 2:20-cv-00534-APG-DJA

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** Plaintiffs Jennifer Miranda and Patricia Terry ("Plaintiffs"), by and through their undersigned counsel of record, move pursuant to Fed. R. Civ. P. 23(e) for the Court to: (i) grant final approval of the Stipulation of Class Action Settlement ("Settlement Agreement"), and (ii) certify the Settlement Class.

This motion is made on the grounds that final approval of the proposed class action settlement is proper, given that each required of Rule 23(e) has been met.

This motion is based on the concurrently filed Memorandum of Points and Authorities, the accompanying Declarations of Yitzchak Kopel and Brian Smitherman and attachments thereto, the pleadings and papers on file herein, and any other written and oral arguments that may be presented to the Court.

Dated: April 15, 2021

Respectfully submitted,

By: */s/ Bradley S. Schrager*

Bradley S. Schrager, Esq. (SBN 10217)
Daniel Bravo, Esq. (SBN 13078)
A. Jill Guingcangco, Esq. (SBN 14717)
**WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP**
3556 E. Russell Road, 2nd Floor
Las Vegas, Nevada 89120
Telephone: (702) 341-5200 / Fax: (702) 341-5300
Email: dspringmeyer@wrslawyers.com
Email: dbravo@wrslawyers.com
Email: ajg@wrslawyers.com

**BURSOR & FISHER, P.A.**
Yitzchak Kopel (*pro hac vice*)
Max S. Roberts (*pro hac vice*)
888 Seventh Avenue, Third Floor
New York, New York 10019
Telephone: (646) 837-7150 / Fax: (212) 989-9163
Email: ykopel@bursor.com
Email: mroberts@bursor.com

*Class Counsel*

## TABLE OF CONTENTS

PAGE(S)

I. INTRODUCTION ..... 1

II. BACKGROUND AND PROCEDURAL POSTURE ..... 2

III. THE STANDARD FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS ..... 3

IV. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ..... 4

V. THE SETTLEMENT NOTICE PROGRAM HAS BEEN COMPLETED AND THE CLASS MEMBER RESPONSE HAS BEEN POSITIVE ..... 5

VI. THE SETTLEMENT AGREEMENT IS FAIR, ADEQUATE, AND REASONABLE ..... 6

A. The Settlement Was The Product Of Serious, Informed Litigation And Non-Collusive Negotiations ..... 6

B. Strength Of Plaintiffs' Case ..... 7

C. The Settlement Provides Exceptional Relief For The Class ..... 9

D. The Risk Of Continuing Litigation And Maintaining Class Action Status ..... 11

E. The Response Of Class Members Has Been Universally Positive ..... 12

F. The View Of Experienced Counsel Support Approving This Settlement ..... 12

VII. CONCLUSION ..... 13

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 4

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
100 F.3d 1041 (1st Cir. 1996) .......... 7

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) .......... 11

*Fox v. Iowa Health System*,
2021 WL 826741 (W.D. Wisc. Mar. 4, 2021) .......... 8, 9, 11

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .......... 7

*Gordon v. Chipotle Mexican Grill, Inc.*,
2019 WL 6972701 (D. Colo. Dec. 16, 2019) .......... 8, 11

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......... 4

*Harris v. U.S. Physical Therapy, Inc.*,
2012 WL 6900931 (D. Nev. Dec. 26, 2012) .......... 13

*In re Anthem, Inc. Data Breach Litig.*,
2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) .......... 8

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) .......... 1, 8, 12

*In re Netflix Privacy Litig.*,
2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .......... 5

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......... 12

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) .......... 6

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) .......... 8, 11, 12

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Prac., and Prod. Liab. Litig.*,
2012 WL 7802852 (C.D. Cal. Dec. 28, 2012) .......... 6

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
2020 WL 4212811 (N.D. Cal. July 22, 2020) .......... 1, 8, 12

*La Caria v. Northstar Location Services, LLC*, 2021 WL 94477 (D. Nev. Jan. 11, 2021) .......... 4

*Lee v. Enterprise Leasing Co.-West*, 2015 WL 2345540 (D. Nev. May 15, 2015) .......... 7, 11

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) .......... 12

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615 (9th Cir. 1982) .......... 3, 4, 7

*Retta v. Millennium Prods., Inc.*, 2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) .......... 6, 7

*Rodriguez v. West Publishing Corp.*, 563 F. 3d 948 (9th Cir. 2009) .......... 3, 7, 11, 13

*Smith v. Triad of Ala., LLC*, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017) .......... 8

*Wilson v. Airborne, Inc.,* 2008 WL 3854963 (C.D. Cal., Aug. 13, 2008) .......... 6

**RULES**

Fed. R. Civ. P. 23(c)(2)(B) .......... 1

Fed. R. Civ. P. 23(e) .......... 3

Fed. R. Civ. P. 23(e)(2) .......... 3

**OTHER AUTHORITIES**

*Federal Judicial Center Judges' Class Action Notice and Claims Process Checklist*, www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf .......... 6

Plaintiffs Jennifer Miranda and Patricia Terry ("Plaintiffs" or "Class Representatives") respectfully submit this memorandum in support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Certification of Settlement Class.

## I. INTRODUCTION

On December 17, 2020, the Court granted preliminary approval to the parties' Settlement Agreement and ordered that the Settlement Administrator execute the approved Notice Plan. Order Preliminarily Approving Class Action Settlement, ECF No. 44. The success of the Notice Plan and response from Class Members confirms that the Settlement is fair and reasonable and provides outstanding relief to the Class.

As attested to in the Declaration of Brian Smitherman ("Smitherman Decl."), the notice plan established by Class Counsel reached 93% of the Settlement Class. Smitherman Decl. ¶ 17. This result is in line with far larger data breach settlements, and meets the requirements for class action settlements. *Id.* ¶ 20; *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (granting final approval of data breach settlement where "[o]nly about 1.8% of the Settlement Class Members have submitted claims"); *id.* (noting that the claims rate "in the *In re Home Depot* and *In re Target* data-breach actions"—in which final approval was granted in both actions—were "0.2% and 0.23%" respectively); *In re Yahoo! Inc. Customer Data Security Breach Litig.*, 2020 WL 4212811, at *34 (N.D. Cal. July 22, 2020) (granting final approval of data breach settlement with "only a 0.3% claims rate"); *Fox v. Iowa Health System*, Case No. 3:18-cv-00327-JDP, ECF No. 101, at ¶ 28 (W.D. Wis. Dec. 3, 2020), *final approval granted*, 2021 WL 826741 (W.D. Wisc. Mar. 4, 2021) (12,028 claims out of 1.4 million class members in data breach action, or a 0.86% claims rate). And, despite the success of the notice program, no objections have been filed and only a single class member has opted out. *See* Smitherman Decl. ¶¶ 18-19. Undoubtably, the notice plan here constitutes the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

Due to the success of the notice program, Class Members who submitted timely and valid claims will be able to partake in the Settlement, which carries a $4.5 million value (exclusive of

requested attorneys' fees and costs). Declaration of Yitzchak Kopel ("Kopel Decl."), ¶ 9. Pursuant to the Settlement Agreement, Class Members (1) can recoup up to $200 in documented out-of-pocket expenses, with an aggregate cap of $250,000, (2) receive reimbursement for up to three hours of undocumented lost time, payable at $15 per hour (for a total of $45), that is not subject to the $250,000 aggregate cap, and (3) can sign up for a free year of "Identity Guard Total powered by IBM Watson" advanced credit monitoring (which includes, among other things, a policy of up to $1 million reimbursement insurance from AIG covering losses due to identify theft and stolen funds), an aggregate retail value of over $3.5 million. *Id.* This relief is comparable to much larger data breach settlements.

This Court has already preliminarily held that the Settlement is "fair, reasonable, and adequate" and approved the Notice Plan. Order Preliminarily Approving Class Action Settlement, ECF No. 44, at ¶¶ 6, 10. Now that it is plain that the Settlement Agreement and the Notice Plan were a success, the Court should certify the Settlement Class and grant final approval of the Settlement.

## II. BACKGROUND AND PROCEDURAL POSTURE

On March 16, 2020, Plaintiffs filed this case in this Court, alleging that Defendant Golden Entertainment (NV), Inc. ("Golden") (collectively with Plaintiffs, the "Parties") was negligent in its handling of the personal identification information ("PII") of its consumers, current and former employees, and vendors, which allegedly led to a data breach in May 30, 2019. ECF No. 1. From the outset of the case, the Parties engaged in direct communications, and as part of their obligations under Fed. R. Civ. P. 26, discussed the prospect of early resolution. Indeed, the Parties agreed to four requests to extend Golden's deadline to respond to the Complaint so as to give the Parties sufficient time to negotiate a settlement. *See* ECF Nos. 10, 12, 17, 19.

After three months of negotiations, it appeared as though the Parties had reached an impasse. On June 18, 2020, Golden filed its Motion to Dismiss. ECF No. 21. Plaintiffs responded on July 2, 2020 by filing the First Amended Complaint, which bolstered the original Complaint's allegations and added claims for negligent representation and breach of contract. ECF No. 24.

These filings prompted the Parties to renew their settlement negotiations. Kopel Decl. ¶¶ 4-6. On August 13, 2020, the Parties notified the Court that they had reached a "settlement in principle" and were in the "process of memorializing their agreement." ECF No. 30. As discussed above, this Settlement was reached over the course of five months of substantial arm's-length negotiations. Kopel Decl. ¶ 7.

Plaintiffs filed their Motion for Preliminary Approval of Class Action Settlement on October 12, 2020. ECF No. 34. The Court held a hearing on December 2, 2020, and granted preliminary approval on December 17, 2020. ECF No. 44. The Court's preliminary approval order approved the proposed Notice Plan and directed the parties and the Claims Administrator to provide notice pursuant to the entered schedule. As discussed herein, the Notice Plan has been fully executed and has been a tremendous success.

Plaintiffs have filed their Motion for an Award of Attorneys' Fees, Costs and Expenses, and Service Awards for the Class Representatives concurrently with this motion. The motion is set for hearing on May 12, 2021, concurrently with the Final Approval hearing.

## III. THE STANDARD FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

"The claims, issues, or defenses of a certified class may be settled … only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). To assess whether a proposed settlement comports with Rule 23(e), a district court "may consider some or all" of the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also*

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). No single factor is the "most significant." *Officers for Justice*, 688 F.2d at 625.

In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.

## IV. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

The Ninth Circuit has recognized that certifying a settlement class to resolve consumer lawsuits is a common occurrence. *Hanlon*, 150 F.3d at 1019; *see also La Caria v. Northstar Location Services, LLC*, 2021 WL 94477, at *3 (D. Nev. Jan. 11, 2021) ("When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23."). In assessing those class certification requirements, a court may properly consider that there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

In its Order Preliminarily Approving Class Action Settlement, the Court certified the following class for settlement purposes:

> [A]ll customers, vendors, and current and former employees of Golden to whom Golden mailed notice that between May 30, 2019, and October 6, 2019, Golden was the target of a cyberattack in which third parties sent phishing emails to Golden's employees in the hopes of gaining access to Golden's computer systems and might have resulted in unauthorized parties accessing personal information. The Settlement Class specifically excludes: (i) Golden and its respective officers and directors; (ii) all Settlement Class Members who timely opt-out of the settlement; (iii) the judge assigned to evaluate the fairness of this settlement; and (iv) any other person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the criminal activity occurrence of the Phishing Attack or who pleads nolo contendere to any such charge.

ECF No. 44, at ¶ 4. The Court found that "(a) the Settlement Class certified herein numbers at least in the tens of thousands of persons, and joinder of all such persons would be impracticable; (b) there are questions of law and fact that are common to the Settlement Class, and those questions of law and fact common to the Settlement Class predominate over any questions affecting any

individual Settlement Class Member; (c) the claims of the plaintiffs are typical of the claims of the Settlement Class they seek to represent for purposes of settlement; (d) a class action on behalf of the Settlement Class is superior to other available means of adjudicating this dispute; and (e) as set forth below, plaintiffs and their counsel are adequate representatives of the Settlement Class." *Id.* ¶ 3. Notably, no objections have challenged that conclusion. The Court may rely on the same rationale as explained in its Order to find that class certification is appropriate under Fed. R. Civ. P. 23(a) and (b) in connection with final approval. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *3 (N.D. Cal. Mar. 18, 2013) ("Because the Objections do not appear to raise a viable challenge to th[e] conclusion [that certification of a settlement class is appropriate], the Court will rely on the rationale for class certification as explained in the Preliminary Approval Order.").

## V. THE SETTLEMENT NOTICE PROGRAM HAS BEEN COMPLETED AND THE CLASS MEMBER RESPONSE HAS BEEN POSITIVE

In its December 17, 2020 Order, after an evaluation of the Settlement Agreement's proposed Notice Plan, the Court found "the form, content, and method of disseminating notice to the Class" comply with Fed. R. Civ. P. 23(c)(2), Fed. R. Civ. P. 23(e), 28 U.S.C. § 1715, and the Due Process Clause of the United States Constitution because "they are the best practicable means of notice under the circumstances, and are reasonably calculated, under all the circumstances, to apprise the members of the Class of the pendency of the Action, the terms of the Settlement, and their right to object to the Settlement or exclude themselves from the Class." ECF No. 44 ¶ 10(c). "The Court further [found] that all of the notices are written in simple terminology, are readily understandable by Class Members, and comply with the Federal Judicial Center's illustrative class action notices." *Id.*

Each of the Settlement's Notice provisions was implemented as set out in the Settlement and instructed by the Court. The Settlement Administrator received 155 timely filed Claims to date and is currently reviewing the validity of those claims. Smitherman Decl. ¶ 20.

The Notice Plan has been a success. To start, every Class member for whom Defendant had contact information received direct notice via mail. Smitherman Decl. ¶¶ 5-6. Further, any Class Members whose addresses had changed received forwarded mail notice. In addition, as

required by the December 17, 2020 Order, the notice administrator (1) timely established and began operating the Settlement Website and Toll-Free Telephone Number by January 18, 2021; (2) timely uploaded the Settlement Agreement, the Class Action Complaint, the First Amended Class Action Complaint, the Order Preliminarily Approving Class Action Settlement, and (3) and timely uploaded the Claim Form (and allowed Class Members to files claims through the website). Smitherman Decl. ¶¶ 9-13.

The notice administrator estimates that the notice program delivered an approximate 93% reach. Smitherman Decl. ¶ 17. The 93% reach is the hallmark of a great notice program, and certainly within the range of approval. *See*, *e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 945-46 (9th Cir. 2015) (affirming approval of notice plan based on rental records using both regular mail and email); *Wilson v. Airborne, Inc.,* 2008 WL 3854963, at * 4 (C.D. Cal., Aug. 13, 2008) (approving program reaching 80% of Class Members); *Federal Judicial Center Judges' Class Action Notice and Claims Process Checklist*, www.fjc.gov/public/pdf.nsf/lookup/ NotCheck.pdf/$file/NotCheck.pdf ("A high reach, e.g. between 70-95% can often reasonably be reached by a notice campaign"); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Prac., and Prod. Liab. Litig.*, 2012 WL 7802852, at *8 n.13 (C.D. Cal. Dec. 28, 2012) ("Notice need not actually reach every single class member; instead, the notice need only be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'") (quoting *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994)). Despite this impressive reach, to date, not a single person has objected to any part of the Settlement.

## VI. THE SETTLEMENT AGREEMENT IS FAIR, ADEQUATE, AND REASONABLE

### A. The Settlement Was The Product Of Serious, Informed Litigation And Non-Collusive Negotiations

There is no question that the Settlement was arrived at through genuine arm's-length bargaining after a developed factual record that allowed the parties to have a "clear view of the strengths and weaknesses of their case[]." *Retta v. Millennium Prods., Inc.*, 2017 WL 5479637, at *6 (C.D. Cal. Aug. 22, 2017). Accordingly, it is entitled to a presumption of reasonableness. *City*

*P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arm's-length, there is a presumption in favor of the settlement."); *see also Rodriguez*, 563 F. 3d at 965 ("We put a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution."); *Lee v. Enterprise Leasing Co.-West*, 2015 WL 2345540, at *5 (D. Nev. May 15, 2015) ("Considering the favorable terms of the settlement, the Court has no reason to doubt class counsel's representation that the Parties' settlement negotiations were in good faith, at arms'-length and were in no way collusive.").

As discussed above, and in Plaintiffs' motion seeking preliminary approval, the Settlement is the result of arm's-length negotiations that began at the onset of this case and spanned many months. The Parties notified the Court of a settlement-in-principle on August 13, 2020, five months after the filing of the case. Kopel Decl. ¶ 7. The prolonged settlement negotiations allowed the Parties to analyze the respective strengths and weaknesses of their respective positions. Kopel Decl. ¶¶ 11-15. Thus, "Class Counsel did not negotiate the Settlement Agreement in a vacuum, but were able to fully consider the strengths and weaknesses of Plaintiffs' claims." *Retta*, 2017 WL 5479637, at *6. "Accordingly, this factor weighs in favor of granting final approval." *Id*.

**B. Strength Of Plaintiffs' Case**

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotations omitted). The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez*, 563 F.3d at 965). Here, the settlement negotiations were hard-fought and negotiated over five months, with both parties and their counsel thoroughly familiar with the applicable facts, legal theories, and defenses on both sides. Plaintiffs believe that the Settlement is an outstanding result considering the issues addressed below.

Data breach cases like this one are particularly complex and risky. *Fox v. Iowa Health System*, 2021 WL 826741, at *5 (W.D. Wisc. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result."); *Gordon v. Chipotle Mexican Grill, Inc.*, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases such as the instant case are particularly risky, expensive, and complex."); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky."). Those risks are exacerbated at class certification due to the "dearth of precedent" on non-settlement data breach classes. *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018). Indeed, as far as Class Counsel knows, only one non-settlement data-breach class has been certified under Fed. R. Civ. P. 23(b)(3) to date. *Id.* (citing *Smith v. Triad of Ala., LLC*, 2017 WL 1044692, at *16 (M.D. Ala. Mar. 17, 2017)). "Moreover, multiple federal courts around the country had denied bids to certify classes in data-breach cases." *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *12 (N.D. Cal. Aug. 17, 2018).

In particular, Plaintiffs would also face the very high risk that they could not present a damages model at trial. *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. at 318 ("The Court further notes that trying the case may have presented certain manageability problems with regard to the calculation of individual damages under some of the proposed damages theories."); *In re Yahoo! Inc. Customer Data Security Breach Litig.*, 2020 WL 4212811, at *9 (N.D. Cal. July 22, 2020) ("Yahoo contested whether Plaintiffs could determine on a class-wide basis … the value of any Personal Information provided to Yahoo, and whether the Data Breaches caused a decrease in that value."). Even in certifying a non-settlement data breach class, the *Smith* court noted "[t]he Named Plaintiffs claim myriad [] different expenses, costs, fees, penalties, lost opportunities, loss of time, mileage costs, lost wages, professional fees, general frustration, and other inconveniences. Resolving these claims for damages will require a series of proceedings in which each class member can put on his or her case for damages." *Smith v. Triad of Ala., LLC*, 2017 WL 1044692, at *14 (M.D. Ala. Mar. 17, 2017).

Golden vigorously denies Plaintiffs' allegations and assert that neither Plaintiffs nor the Class suffered any harm or damages. In addition, Golden would no doubt present a robust defense at trial, and there is no assurance that the Class would prevail – or even if they did, that they would be able to obtain an award of damages significantly higher than achieved here absent such risks. *Fox*, 2021 WL 826741, at *5 ("Data breach litigation is evolving; there is no guarantee of the ultimate result."). Thus, in the eyes of Class Counsel, the proposed Settlement provides the Class with an outstanding opportunity to obtain significant relief at this stage in the litigation. The Settlement also abrogates the risks that might prevent Class Members from obtaining *any* relief.

### C. The Settlement Provides Exceptional Relief For The Class

The considerations offered by the Settlement Agreement provide extraordinary results for the Class. Class Members were permitted to claim (i) up to $200 in documented out-of-pocket expenses incurred as a result of the Phishing Attack, with an aggregate cap of $250,000, (ii) up to three hours of undocumented lost time, payable at $15 per hour (for a total of $45), that is not subject to the $250,000 aggregate cap, and (iii) a free year of "Identity Guard Total powered by IBM Watson" advanced credit monitoring—which includes, among other things, a policy of up to $1 million reimbursement insurance from AIG covering losses due to identify theft and stolen funds—an aggregate retail value of over $3.5 million. Considering the significant risks of non-payment Class Members would have faced had this case proceeded, the Settlement Agreement provides tremendous relief.

The $4,545,735 settlement value (exclusive of attorneys' fees and costs) and individual relief per Class Member are also outstanding in comparison to other, larger data breach cases[1]:

//

//

//

//

[1] The below-referenced settlement have been attached as Exhibits 5-8 to the Declaration of Yitzchak Kopel In Support Of Motion For Preliminary Approval (ECF No. 34).

| Case | Size | Out-Of Pocket Reimbursement | Lost Time Reimbursement | Credit Monitoring |
|---|---|---|---|---|
| *Miranda v. Golden Entertainment (NV), Inc.*, Case No. 2:20-cv-00534 (D. Nev.) | 17,683 | Up to $200 documented per class member, capped at $250,000 in aggregate | Up to three hours, $15 per hour (total of $45), undocumented, not subject to aggregate cap | One free year of "Identity Guard Total powered by IBM Watson" credit monitoring, including a $1 million AIG insurance policy for losses from data breach |
| *Johansson-Dohrmann v. CBR Systems, Inc.*, Case No. 3:12-cv-01115 (S.D. Cal.) | ~292,000 | Aggregate cap of $500,000 for all documented out of pocket expenses, $200 cap per class member for cost of obtaining credit monitoring | $10 per hour, no hour cap, documented, subject to $500,000 aggregate cap | Two free years of ProtectMyID Alert credit monitoring |
| *Smith v. ComplyRight, Inc.*, Case No. 1:18-cv-04990 (N.D. Ill.) | ~663,000 | Estimated $50 cash payment per class member from $3.025 million fund, no documentation required | Estimated $50 cash payment from $3.025 million fund, no documentation required | Two free years of MyIDCare credit monitoring |
| *Bray v. Gamestop Corp.*, Case No. 1:17-cv-01365 (D. Del.) | ~1.3 million | Up to $235 per class member in documented out-of-pocket expenses, no aggregate cap | Up to three hours of documented lost time per class member, compensable at $15 per hour (total of $45) | None |
| *In re LinkedIn User Privacy Litig.*, Case No. 5:12-cv-03088 (N.D. Cal.) | ~6.5 million | Maximum payment of $50 from $1.25 million common fund, no documentation | Maximum payment of $50 from $1.25 million common fund, no documentation | None |

As the above chart makes clear, Class Members in this case can be compensated for lost time and out-of-pocket expenses at roughly the same level as class members in much larger data breaches. Further, unlike class members in *CBR Systems* and *Gamestop*, Class Members here do not need documentation to recover lost time. Finally, unlike class members in *Gamestop* and

*LinkedIn*, Class Members here can receive a free year of advanced credit monitoring with $1 million in insurance to protect against identity theft.

**D. The Risk Of Continuing Litigation And Maintaining Class Action Status**

As referenced above, proceeding in this litigation in the absence of settlement poses various risks such as failing to certify a class, having summary judgment granted against Plaintiffs, or losing at trial. Such considerations have been found to weigh heavily in favor of settlement. *See Rodriguez*, 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class."); *Lee*, 2015 WL 2345540, at *5 ("Because denial of the motion for final approval of settlement could cause significant further litigation, and appeals that could disturb the Court's findings, this factor weighs in favor of approving the settlement."). These risks are exacerbated in a data breach case such as this one. *Fox*, 2021 WL 826741, at *5 ("Data breach litigation is evolving; there is no guarantee of the ultimate result."); *Gordon*, 2019 WL 6972701, at *1 ("Data breach cases such as the instant case are particularly risky, expensive, and complex."); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, 2019 WL 3773737, at *7 ("Data breach litigation is complex and risky.").

Plaintiffs would also face the risk of establishing liability at trial in light of conflicting expert testimony between their own expert witnesses and Golden's expert witnesses. In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which expert version would be accepted by the jury. The experience of Class Counsel has taught them that these considerations can make the ultimate outcome of a trial highly uncertain. Moreover, even if Plaintiffs prevailed at trial, in light of the possible damage theories that could be presented by both sides, there is a substantial likelihood based on the above analysis that Class Members may be awarded significantly less than is offered to them under this Settlement on an individual basis. By settling, Plaintiffs and the Class avoid these risks, as well as the delays and risks of the appellate process.

### E. The Response Of Class Members Has Been Universally Positive

Despite an expansive notice program that reached 93% of Class Members, only a single class member opted out of the settlement and not a single class member objected. Smitherman Decl. ¶¶ 17-19. Such an overwhelmingly positive response from Class Members supports final approval. *See*, *e.g.*, *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement. It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."). Further, the claims rate here—0.87%—is in line with, or even superior to, other data breach cases. Smitherman Decl. ¶ 20; *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. at 321 (granting final approval of data breach settlement where "[o]nly about 1.8% of the Settlement Class Members have submitted claims"); *id.* (noting that the claims rate "in the *In re Home Depot* and *In re Target* data-breach actions"—in which final approval was granted in both actions—were "0.2% and 0.23%" respectively); *In re Yahoo! Inc. Customer Data Security Breach Litig.*, 2020 WL 4212811, at *34 (granting final approval of data breach settlement with "only a 0.3% claims rate"); *Fox v. Iowa Health System*, Case No. 3:18-cv-00327-JDP, ECF No. 101, at ¶ 28 (W.D. Wis. Dec. 3, 2020), *final approval granted*, 2021 WL 826741 (12,028 claims out of 1.4 million class members in data breach action, or a 0.86% claims rate); *see also In re Sonic Corp. Customer Data Sec. Breach Litig.*, 2019 WL 3773737, at *10 ("The claims rate was lower than hoped, but it is unclear that any alternative notice method could have improved the claim rate. Counsel should not be penalized for a low claims rate in cases where claims are inherently less likely to be made.").

### F. The View Of Experienced Counsel Support Approving This Settlement

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Deference to Class Counsel's evaluation of the Settlement is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that

fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967. Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation. Based on their experience, Class Counsel concluded that the Settlement provides exceptional results for the class while sparing the class from the uncertainties of continued and protracted litigation. *Harris v. U.S. Physical Therapy, Inc.*, 2012 WL 6900931, at *9 (D. Nev. Dec. 26, 2012) ("Based on counsels' knowledge of the specific facts of this action, experience in settlements such as this, and opinion that the settlement is fair, reasonable, and adequate, the court finds that this factor weighs in favor of granting final approval of the settlement.").

For all the foregoing reasons, the Settlement is fair, adequate, and reasonable, and should be preliminarily approved.

## VII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval to the Settlement Agreement, certify the Settlement Class, and enter the Final Approval Order in the form submitted herewith.

Dated: April 15, 2021

Respectfully submitted,

By: */s/ Bradley S. Schrager*

Bradley S. Schrager, Esq. (SBN 10217)
Daniel Bravo, Esq. (SBN 13078)
A. Jill Guingcangco, Esq. (SBN 14717)
**WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP**
3556 E. Russell Road, 2nd Floor
Las Vegas, Nevada 89120
Telephone: (702) 341-5200 / Fax: (702) 341-5300
Email: dspringmeyer@wrslawyers.com
Email: dbravo@wrslawyers.com
Email: ajg@wrslawyers.com

**BURSOR & FISHER, P.A.**
Yitzchak Kopel (*pro hac vice*)
Max S. Roberts (*pro hac vice*)
888 Seventh Avenue, Third Floor
New York, New York 10019
Telephone: (646) 837-7150 / Fax: (212) 989-9163

Email: ykopel@bursor.com
Email: mroberts@bursor.com

*Class Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of April, 2021, a true and correct copy of **Plaintiffs' Notice of Motion and Motion for Final Approval of the Class Action Settlement and Certification of Settlement Class** was served via the United States District Court CM/ECF system on all parties or persons requiring notice.

By: *\/s/ Dannielle Fresquez*
Dannielle Fresquez, an Employee of
WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP